GRATIA B. GILLILAN, Appellant, v. LORENZO GILLILAN et al.; ANNIE F. CARR et al., Appellants.

In Banc, May 16, 1919.

1. **PRIMOGENITURE: Fee Tail: Oldest Son: Statute.** If the will devised land to a son and the heirs of his body subsequently born and there were no such heirs and in consequence the estate on the son's death reverted to the testator's estate, the land did not vest in the testator's oldest son or his oldest son. The land so devised when it reverted to the common source did not, by the statutory abolition of fee tails, descend to the oldest son by the rule of primogeniture. The statute (Sec. 2872, R. S. 1909) in declaring that, after the death of the person who by the common or statute law of England might be seized in fee tail in lands,

"the remainder shall pass in fee simple absolute to the person to whom the estate-tail would, on the death of the first grantee, devisee or donee in tail, first pass according to the course of the common law," cannot be held to be a recognition of the rule of primogeniture. That rule has long been abolished in this State.

2. WILL: Estate Tail: Converted Into Fee Simple by Failure of Issue. Testator by the fifth clause of his will devised certain land "to my son George W. Gillilan and to his heirs hereafter born to him; this devise however, in behalf of my son George W. Gillilan shall be to the exclusive use and benefit of my son George and the heirs of his body hereafter born, excluding his present wife, Martha I. Gillilan and her three children, Oma V., Anna F. and Independent N., from all benefit or interest or part whatsoever in my estate; I do hereby to make my will clear of all doubt declare that it is my intention, and I do hereby disinherit and exclude the said Martha I. Gillilan and her three children, from all interest or part whatever in my estate." *Held*, that the words employed created an estate in fee tail special in George and the heirs of his body thereafter born, and consequently upon the death of George without such issue his will devising the land to his second wife was inoperative, since he had only a life estate; and the contingent remainder to the unborn heirs lapsed and reverted to testator's estate, and since he, by a subsequent residuary clause of the will devised the remainder of his estate to his two sons, the said George and John D., in equal parts, he devised to them such reversionary estate, of which one-half went to the children of George by his wife Martha, subject to the dower rights of the second wife.

3. ———: ———: ———: Defeasible Estate: Heirs for Children: Intention. A devise to a son and "to the heirs of his body hereafter born to him" for the "exclusive use and benefit of my said son and the heirs of his body hereafter born," and specifically "excluding his present wife and her three children" and declaring "it is my intention and I do hereby disinherit his present wife and her three children," did not create a defeasible estate in fee in the son which became absolute upon failure of subsequent issue to him, nor can the word "children" be substituted for the word "heirs" and by that substitution the devise be held to be a defeasible estate to the son which became absolute when no children were thereafter born. The word children may be substituted for heirs where such substitution is necessary to carry out the paramount purpose and dominant thought of the testator manifested by the language employed; but where the intention is clear and unmistakable, as is this case, no such substitution is permissible.

4. ———: Contingent Remainder: Lapse: Reversion. Where a will by one clause devises land to a son and the heirs of his body thereafter born, the contingent remainder to the unborn heirs, upon

failure of issue, lapses, and the estate reverts to the testator, which by a subsequent residuary clause may be devised to named devisees.

5. ——: ——: ——: **Presumption of Further Devise.** The presumption that the testator, having made a devise of specific property, did not intend, upon the lapse thereof, to make a further devise, does not arise when he did, in fact, by a residuary clause make such further devise.

6. ——: **Reversionary Estate.** A reversionary estate is the subject of a valid devise.

Appeal from Daviess Circuit Court. —*Hon. Arch B. Davis,* Judge.

AFFIRMED.

*E. M. Harber, A. G. Knight* and *J. W. Peery* for appellant Gratia B. Gillilan.

(1)　The words "heirs" or "heirs of the body" will be construed to mean children whenever the context shows that such was the intention of the testator or of the grantor. The manner in which the words are used in the fifth clause of the will in question show clearly that they mean children. Waddell v. Waddell, 99 Mo. 345; Heady v. Hollman, 251 Mo. 638; Eckle v. Ryland, 256 Mo. 424; Maguire v. Moore, 108 Mo. 272; Fanning v. Doan, 128 Mo. 323; Rothwell v. Jameson, 147 Mo. 601; Cross v. Hoch, 149 Mo. 341; Brown v. Tuschoff, 235 Mo. 458; Johnson v. Calvert, 260 Mo. 454; 4 Words and Phrases (1st Series), pp. 3269-3270; 2 Words & Phrases (2 Series), pp. 840-850; 2 Words & Phrases (2 Series), pp. 861-864; 2 Underhill on Wills, par. 616; Adair v. Adair, 30 Ky. Law. Rep. 856. (2) The fifth clause of the will being read as a devise to George W. Gillilan and his children thereafter born to him, there are several views which may be taken under the authorities as to the interest devised to him. (a) There are cases in this State which hold that under a devise he would take the fee as tenant in common with the children thereafter born. Hamilton v. Pitcher, 53 Mo. 334; Allen v. Claybrook, 58 Mo. 124; Hall

v. Stephens, 65 Mo. 670; Reed v. Painter, 129 Mo. 680. (b)    Under the following cases it could well be argued that he took the fee irrespective of whether children were born.  Rines v. Mansfield, 96 Mo. 394; Small v. Field, 102 Mo. 104;  Tygard v. Hartwell, 204 Mo. 200; Rothwell v. Jameson, 147 Mo. 601;  Carter v. Long, 181 Mo. 701.  (c)  The true rule, however, is that he took a defeasible fee subject to be divested upon the birth of children; and as none were born it remained in him.  Tindall v. Tindall, 167 Mo. 218; Davis v. Ripley, 194 Ill. 390; Boehm v. Baldwin, 221 Ill. 59; Reed v. Welborn, 253 Ill. 338; Rothwell v. Jameson, 147 Mo. 601.  (3)  The law favors the vesting of estates and in the absence of words expressing a clear intent to the contrary the estate will be construed to vest at the earliest possible time and immediately upon the testator's death.  Tindall v. Tindall, 167 Mo. 255;  Deacon v. Trust Co., 271 Mo. 687.  (4)  A testator will not be presumed to have intended to create an estate-tail which is forbidden by statute if any other reasonable construction can be given to the will.  Combs v. Eversole, 23 Ky. Law Rep. 932.  (5)  If the court should hold that the fifth clause of Nathan Gillilan's will did create an estate-tail (and we contend it did not), then we concede that the interest in reversion therein would pass under the residuary clause of the will, and the decree of the trial court should in that case be affirmed.  40 Cyc. 1950; Youngs v. Youngs, 45 N. Y. 254; High's Estate, 136 Pa. St. 222;  Moran v. Moran, 65 Am. St. 443, 39 L. R. A. 204; Givens v. Ott, 222 Mo. 395;  Sandusky v. Sandusky, 261 Mo. 351.

*Clinton A. Welsh* for appellant Ann F. Gay.

(1)  The will of Nathan Gillilan, did not devise the five hundred acres of land in clause 9 of said will to either John D. Gillilan or George W. Gillilan, as residuary devisees.  Hunter v. Patterson, 142 Mo. 321; Utter v. Sidman, 170 Mo. 299;  Hatton v. Jones, 133

N. C. 399; Tiedeman, Real Property, sec. 885; 2 Woerner A. L. Admr., 967; 2 Cooley's Blackstone, 112-114; Sec. 2876, R. S. 1909; Buxton v. Kroeger, 219 Mo. 225; Christ v. Kuehne, 172 Mo. 119; O'Day v. Meadows, 194 Mo. 588; Aldridge v. Aldridge, 202 Mo. 565; Burris v. Page, 12 Mo. 359; Kinney v. Mathews, 69 Mo. 520; Phillips v. LaForge, 89 Mo. 72; Bone v. Tyrell, 113 Mo. 182; Gray v. Ward, 234 Mo. 291; Hall v. French, 165 Mo. 430; Chew v. Keller, 171 Mo. 225; Sec. 578, R. S. 1909; Secs. 2872, 2874, R. S. 1909; Tasson v. Newman, 62 Mo. 198; Muldow v. White, 67 Mo. 470; Emmerson v. Hughes, 110 Mo. 627; Sec. 7, p. 220, R. S. 1845; Brown v. Tuschoff, 235 Mo. 458; Maguire v. Moore, 108 Mo. 273; Chew v. Keller, 100 Mo. 369; Waddell v. Waddell, 99 Mo. 345; Roberts v. Crume, 173 Mo. 579; Heady v. Hollman, 251 Mo. 640; Eckle v. Ryland, 256 Mo. 448; Webb v. Archibald, 128 Mo. 304-305; 18 Am. & Eng. Ency. Law (2 Ed.), 763; 40 Cyc. 1949; 1 Underhill on Wills, p. 449, sec. 335. (2) The plaintiff Gratia B. Gillilan is not entitled to recover in this case, either as the widow of George W. Gillilan, or under his will; for the reason that said George W. Gillilan had a life estate only in said five hundred acres of land and all his right, title and interest therein ended at his death. Warren v. Williams, 25 Mo. App. 22; Sec. 345 R. S. 1909; Phillips v. La-Forge, 89 Mo. 75; Waddell v. Frazier, 245 Mo. 401; Hauser v. Murray, 256 Mo. 97; DeLassus v. Gatewood, 71 Mo. 381; Dickerson v. Dickerson, 211 Mo. 493; Garrison v. Young, 135 Mo. 207. (3) The defendants, Independent N. Gillilan and Anna F. Carr, were not entitled to recover any interest in said five hundred acres of land in this case as the heirs of George W. Gillilan. First, for the reason that said George W. Gillilan did not acquire any right, title or interest in said land under said clause 9 of said will, as a residuary devisee. Second, for the further reason that said parties defendants did not ask the court in their answers for any decree under said clause 9 of said will. Third,

for the further reason that both of said defendants were expressly disinherited by the will of Nathan Gillilan from having any right or interest in his said estate as his heirs. (4) Ann F. Gay and those answering with her by way of cross-bill, and who are claiming as owners in fee simple their respective shares of said land amounting to two hundred and fifty acres, as heirs of Nathan Gillilan, deceased, under the laws of the State of Missouri, relating to descents and distributions, were and are under the law and the facts in this case entitled to recover their respective shares claimed by them in their answer and cross-bill. 13 Cyc. 647-649; Rodney v. Landaw, 104 Mo. 258; Hauser v. Murray, 256 Mo. 73; Utter v. Sidman, 170 Mo. 294; Garrett v. Wilson, 252 Mo. 708; Schmucker's Estate v. Reel, 61 Mo. 597; State v. Baird, 271 Mo. 9; Sullivan v. Garesche, 229 Mo. 507; Thomas v. Anderson, 245 Fed. 642; Thompson on Wills, sec. 305; 2 Cooley's Blackstone, 162; Frame v. Humphry, 164 Mo. 346; Perry v. Strawbridge, 209 Mo. 621; Sec. 332, R. S. 1909; Elsea v. Smith, 273 Mo. 405; Sec. 2877, R. S. 1909; Gates v. Seibert, 157 Mo. 272; Martin v. Martin, 250 Mo. 545; Ross v. Presbyterian Church, 272 Mo. 106.

*Nat G. Cruzen* for respondent Lorenzo J. Gillilan.

(1) When the testator has interpreted a particular clause of his will, the courts when called upon will follow such interpretation. State ex rel. v. McVeigh, 181 Mo. App. 581; Small v. Field, 102 Mo. 129. (2) The court may take into consideration in construing this will, that it was drawn by a lawyer, who knew the meaning and effect of the technical words used. Cross v. Hoch, 149 Mo. 338; 40 Cyc. 1399 and 1432, n. 20. (3) Having in mind the rules of construction and the intentions of the testator, the will of Nathan Gillilan by the fifth clause thereof, devising to "my son George W. Gillilan and to his heirs hereafter born to him," the land in controversy "this devise and bequest, however, in behalf of my said son George shall be to the exclusive use and benefit of my said son George and the

heirs of his body hereafter born" created, what at common law would be an estate tail. 2 Blackstone Comm. 144; 4 Kent. (13 Ed.) p. 9; 16 Cyc. 608; Washburn on Real Prop. (6 Ed.) p. 83, sec. 173; Tiedman on Real Prop. (Enlgd. Ed.) sec. 44, p. 33; Burris v. Page, 12 Mo. 358; Chiles v. Bartleson, 21 Mo. 344; Phillips v. LaForge, 89 Mo. 72; Wood v. Kice, 103 Mo. 329; Emmerson v. Hughes, 110 Mo. 627; Farrar v. Christy's Admrs., 24 Mo. 468; Bone v. Tyrell, 113 Mo. 175; Godman v. Simmons, 113 Mo. 127; Clarkson v. Clarkson, 125 Mo. 385; Hunter v. Patterson, 142 Mo. 310; Rozier v. Graham, 146 Mo. 352; Reed v. Lane, 122 Mo. 311; Utter v. Sidman, 170 Mo. 297; Miller v. Ensminger, 182 Mo. 195; Frame v. Humphrey, 164 Mo. 336; Cox v. Jones, 229 Mo. 64; Gray v. Ward, 234 Mo. 297. (4) This devise being to particular heirs (to the heirs of body hereafter born) and not to the heirs generally created and estate tail special. 16 Cyc. 609b; Tiedeman on Real Prop. (Enlgd. Ed.), sec. 48, p. 36; Washburn on Real Prop. (6 Ed.) p. 92, sec. 200; Phillips v. LaForge, 89 Mo. 72; Reed v. Lane, 122 Mo. 315; Rozier v. Graham, 146 Mo. 359; Summett v. Realty & Brokerage Co., 208 Mo. 513; Gray v. Ward, 234 Mo. 297. (5) The fact that an estate tail may be barred should have no weight in construing a will to determine if an estate tail is created. Middleswarth v. Collins, 1 Phila. (Pa.) 139. (6) Under the laws of the State of Missouri in force at the time of the execution of the will of Nathan Gillilan, and at the time of his death, the said Nathan Gillilan could and did devise by his last will his real estate and all interest therein. Sec. 535, R. S. 1919; Sec. 2787, R. S. 1909; Brown v. Fulkerson, 125 Mo. 400; Godman v. Simmons, 113 Mo. 130; Clark v. Sires, 193 Mo. 502; Smith v. Sweringen, 26 Mo. 567; 40 Cyc. 1048. (7) All estates that are transmissible, either by operation of law or by act of the owner, are held devisable. Redfield on Wills (4 Ed.), p. 388. (8) Having carved out an estate in the fifth clause of his will to George W. Gillilan and the heirs

of his body to be born to him thereafter, there remained in testator a reversion. 4 Kent (13 Ed.), p. 10, 381; 2 Washburn on Real Prop. secs. 1508, 1511; Tiedeman, p. 381; Williams on Real Prop. (17 Ed.) p. 303. (9) What was a mere possibility in a donor of a conditional fee, was turned into a reversion by Statute *de bonis* (13 Edw. 1). 4 Kent, 12; 3 Bacon, Abridgment, 431. (10) A reversion is devisable, descendable and alienable, in the same manner as an estate in possession. 16 Cyc. 662; 40 Cyc. 1048; 2 Washburn on Real Prop. secs. 1509, 1510; Underhill on Wills, secs. 47, 49. (11) A devise of a reversion passes under a residuary clause. 2 Jarman on Wills, 240. (12) A grant of estate after fee tail in same instrument creates a vested remainder. Williams on Real Prop. (17 Ed.) 303, 304, and 312 to 323; 16 Cyc. 649. (13) The reversion remaining in a testator of a will after estate tail may pass by the same instrument, or the residuary clause of a will to such persons as the testator may designate. Steel v. Cook. 1 Metc. (42 Mass.) 283; Farrar v. Christy's Admrs., 24 Mo. 453; Wood v. Kice, 103 Mo. 329; Miller v. Ensminger, 182 Mo. 195; Watson v. Watson, 110 Mo. 164; High Est., 136 Pa. St. 222; Craig v. Craig, 3 Barb. ch. 76; In re Mapes, 55 Hun, 606, 7 N. Y. Supp. 872, 125 N. Y. 728; Lamb v. Lamb, 131 N. Y. 227; Irwin v. Zane, 15 W. Va. 646; 40 Cyc. 1566; Faust Admrs. v. Burner, 30 Mo. 414; Cox v. Jones, 229 Mo. 64; Davis v. Callahan, 78 Me. 313. (14) A man may have an estate tail and the reversion in fee upon failure of issue, but the estate tail will remain intact. 1 Washburn on Real Prop. (5 Ed.), p. 113; Tiedeman on Real Prop. (Enlgd. Ed.) sec. 51; 16 Cyc. 669. A devise may be made to life tenant and same person as remainderman. 2 Redfield on Wills, 417. (15) All void and lapsed legacies inure to the benefit of the residuary legatee. 40 Cyc. 1944; Bradford v. Leake, 137 S. W. 96; Moran v. Moran, 65 Am. St. 443, 39 L. R. A. 204; Givens v. Ott, 222 Mo. 395; Dozier v. Dozier, 183 Mo. 137; Faust v. Birner, 30 Mo. 137.

*Culver & Phillip* for respondent Mary Lee Hays.

(1) By the fifth clause of the will the testator devised the land to George Gillilan "and his heirs thereafter born to him" and declared that the land should be for the exclusive use and benefit of George "and the heirs of his body thereafter born." This created a fee tail special which the statute converted into a life estate in George with remainder in fee to his bodily heirs thereafter born. Hall v. French, 165 Mo. 430; Phillips v. LaForge, 89 Mo. 72; Gray v. Ward, 234 Mo. 291; Hunter v. Patterson, 143 Mo. 310. (2) The "polar star" in the construction of wills is the intention of the testator. McCune v. Goodwill, 204 Mo. 337; Gannon v. Pauk, 200 Mo. 85. (3) Where a testator uses in his will technical words or terms or words having a definite legal signification, he will be presumed to have used them in that sense, and the will will be so construed unless a clear intention to the contrary is apparent from the context. 40 Cyc. 1398; Drake v. Crane, 127 Mo. 85; Dodson v. Kertland Coal Co., 150 S. W. 6; Sample v. Smythe, 105 S. W. 415; Young v. Amburgey, 87 S. W. 802; Underhill on Wills, 651. And where, as here, it appears that the will was drawn by a skilled lawyer, that fact should be considered by the court in determining whether certain words were used in their technical sense. 40 Cyc. 1399. (4) "Heirs of his body" means "heirs born of his body;" and is therefore synonymous with "heirs born to him." All of these terms include not only children, but all persons in the line of descent capable of inheriting from the ancestor, and exclude collateral heirs. Emerson v. Hughes, 110 Mo. 631; Houghton v. Kindall, 89 Mass. 72. (5) The words, " to George and to his heirs hereafter born to him," would have created a fee tail at common law, even if they had been further qualified by the words "by his wife Martha." Gray v. Ward, 234 Mo. 291; Phillips v. LaForge, 89 Mo. 72; Speight v. Askins,

102 S. W. (Tenn.) 74; Fanning v. Doan, 128 Mo. 327. (6) It was not necessary to add the words "for life" to limit the estate devised to George to a life estate. Cross v. Hoch, 149 Mo. 343. (7) Cases in Illinois are governed partially by the statutes of that State. The rule in Shelley's case is in force in that State, but it is abolished in Missouri. See Bailes v. Davis, 241 Ill. 536; R. S. 1909, sec. 578. (8) Under the ninth clause of the will George and John took the reversion left in the testator after the devise created by the fifth clause. (a) The interest left in the testator was a reversion, a present vested interest, which he could and did devise. 30 Cyc. 1474, n. 40; Tiedeman, Real Prop. p. 381; 2 Washburn, Real Prop. (6 Ed.) sec. 1611; 4 Blackstone, 175; Payne v. Beale, 4 Denio (N. Y.), 411; 2 Washburn, Real Prop. (6 Ed.) sec. 1509; 4 Kent, pp. 354, 355. (b) All reversions are vested. 30 Cyc. 1473, N. 39; Brown v. Brown, 93 N. E. 357. (c) They may be conveyed by deed or devise, and will go to the donor's heirs if he dies intestate. 2 Washburn, Real Prop. (6 Ed.) sec. 1510; 16 Cyc. 662; Wingate v. James, 22 N. E. 736; Akers v. Clark, 65 N. E. 296; 3 Washburn, Real Prop. (6 Ed.) sec. 2246. (d) The presumption is that a testator does not intend to die intestate as to any part of his property, and a will should be so construed as to dispose of all of his property, if it is susceptible to such construction. McMahan v. Hubbard, 217 Mo. 637; Meiners v. Meiners, 179 Mo. 614; Duboraw v. Duboraw, 67 Kan. 139. (e) That the residuary clause is broad enough to include the reversion in the five hundred acres is certain. That the testator had a reversion that he could devise is equally certain. That the presumption is that he did not intend to die intestate as to any part of his property, and that the residuary clause must be construed to devise the reversion if it can be, is settled. And that it did carry the reversion is not open to serious debate under the decisions of this court. Givens v. Ott, 222 Mo. 395; Watson v. Watson, 110 Mo. 164; Sandusky v. Sandusky, 261 Mo. 351; Youngs v. Youngs, 45 N. Y. 254; Bradford v.

Leake, 137 S. W. 96; Smith v. Smith, 141 N. Y. 34; Hayden v. Inhabitants of Stoughton, 5 Pick. (Mass.) 538; 13 Amer. & Eng. Ency. Law, 51, n. 4; Harrison v. Foote, 30 S. W. 838; Bowen v. Boyd, 9 Watts & S. 123; 40 Cyc. 1950, 1565, 1564, 1265. (f) The devise in the ninth clause to George and John was not the devise of a. remainder after the devise of the remainder in fee to George's bodily heirs thereafter born, but in lieu of it. Two remainders in fee may be so limited as to take effect, the one being a substitute for, and not subsequent to, the other. Chapin v. Nott, 67 N. E. 833. (g) The vesting of the fee in George and John under the residuary clause was not contingent upon the death of George without bodily heirs thereafter born. On the death of the testator the reversion immediately passed to and vested in George and John, subject to be divested by the death of George leaving such heirs. Therefore on the death of John one-half the fee passed to his children, and on the death of George his one-half of the fee passed under his will to the plaintiff. Gilpin v. Williams, 25 Oh. St. 295; Harrison v. Weatherly, 54 N. E. 243; Coots v. Yewell, 25 S. W. (Ky.) 597; Bell's Estate, 147 Pa. St. 389; Peterson v. Jackson, 196 Ill. 40; Chapin v. Nott, 203 Ill. 341; Strokes v. Van Wyck, 3 S. E. (Va.) 391; In re Yenyon, 20 Atl. (R. I.) 297.

BOND, C. J.—I. Suit to determine title to five hundred acres of land in Daviess County, Missouri.

The case was tried and submitted on an agreed statement of facts setting out in detail the relationship of the parties and the history of the title. The material facts are as follows:

On December 17, 1882, Nathan Gillilan, the common source of title, died testate, owning a large amount of property, including the five hundred acres in suit. His will was contested, but was finally established and recognized as valid, and we quote the two clauses thereof covering the devise of said land:

"Fifth. It is my will and I do hereby give, devise and bequeath to my son George W. Gillilan and to his heirs hereafter born to him, the following described real estate, situated in Daviess County, Missouri, to-wit [description omitted]; this devise and bequest however, in behalf of my son George W. Gillilan shall be to the exclusive use and benefit of my said son George and the heirs of his body hereafter born, excluding his present wife Martha I. Gillilan and her three children, Oma V., Anna F., and Independent N., from all benefit or interest or part whatever in my estate; I do hereby, to make my will clear of all doubt declare that it is my intention, and I do hereby disinherit and exclude the said Martha I. Gillilan and her three children, from all interest or part whatever in my estate.

"Ninth. It is my will and I do hereby provide that after the payment of the several legacies and bequests aforesaid out of and from my estate, the remainder of my said estate, if any, both real and personal, shall be the property of and belong to, and I do hereby give, devise and bequeath the same to my two sons, George W. and John D. Gillilan in equal parts, share and share alike."

Besides the two sons mentioned in the above clauses of the will, said Nathan Gillilan left a son Robert L., a daughter Ann F. Gay, the four children of his deceased daughter Mary Jane Clendennen, and the four children of his deceased daughter Elizabeth Gillilan, all of whom, or their heirs, are parties to this suit:

In 1882 George W. Gillilan was granted a divorce from his wife Martha (who is mentioned in the fifth clause of the will above) and thereafter married Gratia Kirkland. No children were born of this marriage and at his death in 1914, George Gillilan left, by will, all his property to his widow, Gratia, the present plaintiff, with the exception of a bequest of $100 each to the two surviving children of his wife Martha. Suit was brought by these two children (Anna Carr and Independent Gillilan) to contest this will,

which contest was still pending at the institution of this suit.

In 1895, John D. Gillilan, the son mentioned in the ninth clause of the will of Nathan Gillilan, died, leaving as his sole heirs two sons, Lorenzo and Nathan, and a daughter, Mary Lee Hayes. Thereafter Nathan Gillilan sold his interest in the land in question (if any) by warranty deed to his brother Lorenzo.

The trial resulted in a decree by which the court gave one-half of the five hundred acres in dispute to the two children of John D. Gillilan, deceased, (one-sixth to Mary Lee Hayes and two-sixths to Lorenzo Gillilan, he having purchased the one-sixth interest of his brother Nathan); and the other two hundred and fifty acres to Anna Carr and Independent Gillilan, the two children of George Gillilan, deceased, by his former wife Martha, subject to the dower rights of the plaintiff Gratia Gillilan and the settlement of the contest of the will of George Gillilan.

Gratia Gillilan appealed because she did not get as devisee of her husband a fee simple title to one-half the land which was decreed to Anna Carr and Independent Gillilan (the children of Martha, the former wife of George Gillilan). Ann F. Gay and those answering with her appealed, claiming they alone should have title to all the land as the only heirs at law of the late Nathan Gillilan, on the theory that the land in suit reverted to his estate upon the lapse of the devise in clause 5 of his will. Lucas R. Gillilan appealed, claiming all the land as the oldest son of Robert L. Gillilan, the oldest son of Nathan Gillilan, under the common law doctrine of primogeniture. The remaining children of Robert L. Gillilan appealed, claiming equal participancy with said Lucas R. Gillilan.

II. It is contended on behalf of Lucas R. Gillilan that he, being the oldest child of Robert Gillilan, who was the oldest child of Nathan Gillilan, was entitled to the entire estate for the reason that by the statutory

**Primogeniture.** abolition of the fee tail, the land so devised reverted to the common source (Nathan Gillilan) and then descended to him under the rule of primogeniture. The phraseology of so much of the present act (R. S. 1909, sec. 2872) relating to the vesti- ture of the estate after the death of the person who would have been the first tenant in tail under the English law, is claimed to be susceptible of the con- struction that it was intended to vest the 'fee in the oldest son of the life tenant · to the exclusion of his other children, since thé statute uses this language: "And the remainder shall pass in fee simple absolute to the person to whom the estate-tail would, on the death of the first grantee, devisee or donee in tail, first pass *according to the course of the common law,* by vir- tue of such devise, gift, grant or conveyance." [R. S. 1909, sec. 2872.] We do not think the act bears that meaning. The doctrine of primogeniture is contrary to the theory upon which this and other commonwealths were built. This fact is conceded in the opinion of the commissioner cited by appellant Lucas R. Gillilan. [Stockwell v. Stockwell, 262 Mo. l. c. 677.] All that the commissioner said in that case with reference to the· italicized clause above, is that it might furnish "a verbal reason" for a claim that the statute had adopted primogeniture in this State. He, however, immediately added that no such doctrine could exist in this country, citing, in support of his conclusion, Tiedeman on Real Property, sec. 474. To the same effect, Miller v. Ensminger, 182 Mo. l. c. 203.

No part of the common law which was "repugnant to" or "inconsistent with" our Federal Constitution or State laws, was ever adopted as a part of the juris- prudence of this State. [R. S. 1909, sec. 8047.] The doctrine of primogeniture is radically opposed to the spirit, if not the letter of both and what the learned commissioner meant by the terms "verbal reason" was probably a satirical or derisive allusion to an argument which might be made by a verbal play on the language

of the statutes, but which had no real substance. The idea that any such preference in the descent of real property could co-exist in the laws of any of the states, with the axioms of the Federal Constitution guaranteeing equal protection of the laws to all persons and a republican form of government for each state, or with the social and political life modeled on these fundamental principles, is an unthinkable absurdity. Any intimations of a different import in any of the decisions of this court are hereby expressly disapproved. Our conclusion is that Lucas R. Gillilan has no claim whatever other than that possessed equally by his brothers and sisters.

III. The question which will decide the rights of the appellants in this case arise solely out of the view which we shall take of the intendment and effect of clauses five and nine of the will of Nathan Gillilan, deceased. The lawful intent of a testator is the key which unlocks the legal meaning of his last will and testament. The language used in clause five, supra, would have created an estate in fee tail special in five hundred acres of land devised to George W. Gillilan and in the heirs of his body born after the making of the will, according to the common law of England. The words employed contained terms of both procreation and limitation, and, therefore, fall strictly within the established rule defining estates in fee tail. [Gray v. Ward, 234 Mo. 291; Cox v. Jones, 229 Mo. l. c. 65; Hall v. French, 165 Mo. 430; Scudder v. Ames, 142 Mo. 210; Bone v. Tyrell, 113 Mo. l. c. 182; Phillips v. LaForge, 89 Mo. 72; Tiedeman, Real Property (3 Ed.), sec. 41, p. 49; 3 Bacon's Abrdgt. 428, 430.] No estates in fee tail, general or special, have existed in this State since 1825, if ever. [R. S. 1909; secs. 2872, 2874, 578; Elsea v. Smith, 273 Mo. l. c. 413.] Neither does the rule in Shelley's case exist either in deeds or wills.

*Fee Tail.*

278 Mo.—8

It is insisted, however, by the learned counsel for plaintiff Gratia Gillilan, that this court should take the view that clause five of the will of Nathan Gillilan devised a defeasible estate in fee to George W. Gillilan, which became absolute upon failure of issue to him, in which event the plaintiff would take all of the land under the devise to her in her husband's will, in case it should be established in the contest suit still pending. We cannot concur in the view that the language employed in the devise in clause 5, supra, vested George W. Gillilan with an estate in fee of any kind. In support of that notion it is insisted that the term "heirs" (twice mentioned in clause five) should be substituted by the term "children," and that after such substitution it should be held that George W. Gillilan took a defeasible fee which became absolute when no children were thereafter born to him. [Tindall v. Tindall, 167 Mo. 218.] The answer to this contention is that the will, considered as a totality, does not evince a paramount purpose on the part of the testator so strong and controlling, to devise by clause five supra, a defeasible fee to his son George, as to make it our duty to carry out that purpose by substituting other language for that which the testator used in his will. We do not question the rule that the terms "children" and "heirs" may be construed to have been used the one for the other whenever such a construction is *necessary* to carry out the dominant thought of the testator as shown by the language employed in his will. We fully approve the statement of this rule in the cases cited by appellant "that, if the words used in the context warrant it, and such construction will carry into effect the manifest intention that moved the execution of the deed or the signing of the will, then such intention will be made effectual, and the words *heirs* will be construed as meaning children, and *vice versa,* and children as issue, grandchildren or descendants, if the justice or reason of the case requires it. [4 Kent (14 Ed.), 419; 3 Wash. Real Property (5 Ed.), 282; Haverstick's Appeal, 103 Pa.

St. 394; Warn v. Brown, 102 Pa. St. 347.]'' We also agree to the statement of the rule cited by appellant, viz:

"The presumption that the words 'heir of the body' or 'heirs of the body' are used in a technical sense, though it obtains in the large majority of cases, is not always conclusive. The law of construction that the intention of the testator, however expressed, must prevail, will be enough to vary the meaning of those words, if it is apparent that the testator, though using the technical words, has used them in a non-technical sense." 2 Underhill, Wills, sec. 651. To the same effect: Brown v. Tuschoff, 235 Mo. 458.

In this connection it must be carried in mind that the draughtsman of this will was an ex-judge and a trained lawyer, and as such was familiar with the technical meaning of the words and terms used. [40 Cyc. 1399.] The terms of the devise in clause five, supra, twice repeated, were, first, "to my son George W. Gillilan and to his heirs hereafter born to him;" second, "my said son George and the heirs of his body hereafter born," etc. It has been shown that these terms in the strictest and completest sense create an estate in special tail, which, by the statute abolishing entails, became a life tenure in George W. Gillilan with a contingent remainder in fee in his direct descendants born after the making of the will. The case, therefore, in legal effect, is identical with the point in judgment in the case of Emmerson v. Hughes, 110 Mo. 627, where the life estate was conveyed to Mary R. Godman and *"then to the heirs of her body and assigns forever."* In that case BLACK, J., (Ibid. 630) said: "There is nothing in this deed from which we can say the word 'heirs' means children, and this being so, we must give to it its ordinary legal signification." He then held that the deed created a contingent remainder in fee in the plaintiff, who was the granddaughter of the life tenant and fell within the description of "heirs of the body of the tenant for life." There can be no reason in this case,

ascribable to the paramount intent of the testator, for construing the term "heirs" to have been used when children were meant, which did not exist in that case. We are unable, therefore, to follow the theory that such was the intention of the testator and his draughts-man when clause five of the will of Nathan Gillilan was executed.

Having reached that conclusion, it is only necessary to add that the case of Tindall v. Tindall, 167 Mo. 218, relied upon, in the event this court should substitute "children" for "heirs," has no application. However it may be said of that case that the only point held in judgment (under the facts showing that the devisee, Mrs. Tindall, had six children) was what estate she took in these circumstances under the terms of a deed providing, in case of her death without issue, that the estate was "to descend to her heirs at law." The court accordingly held that upon the birth of issue the contingent remainder in these heirs became a vested one in fee. The observation that Mrs. Tindall would have taken a fee if no children had been born to her was, therefore, a mere dictum, with only the persuasive force of an utterance of a learned judge.

IV.   The only remaining question presented by this appeal is what became of the estate remaining in Nathan Gillilan (which he had specifically devised in clause five of his will) upon defeat of that devise for lack of heirs thereafter born to George Gillilan, thereby causing a lapse of the contingent remainder to such heirs. In the solution of this question only two views are possible: first, that such a reversion in Nathan Gillilan passed to his descendants as in case of intestacy; second, that it was conveyed by the residuary clause of the will supra. The latter is the view taken by the learned trial court and is the view taken as a *dernier resort* by appellant Gratia Gillilan (as shown in her brief) in case this court should take, as it does, the view that clause five of the will

*Lapse and Reversion.*

created an estate tail special at common law, which was changed by the statute into a life estate in the tenant in tail with a contingent remainder in fee in certain subsequent heirs of the body of the life tenant. In considering this question it must be realized that Nathan Gillilan had a right, not a mere possibility, of reversion after carving out so much of his estate as was devised through the instrumentality of clause five of the will. The reversion so inhering in him was the proper subject of a grant by clause nine of his will if he so desired; otherwise it would descend to his heirs at law under the statute of descents and distribution as in case of intestacy. Conceding, as claimed for Ann F. Gay and other appellants appearing with her as general heirs at law of Nathan Gillilan, that upon the lapse of a specific devise of realty, the law indulges a presumption that the testator did not intend to make a further devise, yet no such presumption arises when he has made another devise. The question then presented is, what was his intention by the further devise? Did he thereby intend to dispose of the property described in the lapsed devise? For, if so, the property must pass thereby. The dominant thought of the author of this will was to provide in the various ways therein shown, for his children and heirs. His secondary intent was to exclude from the benefits of clause five of his will, the three children and the wife (soon afterwards divorced) of his son George W. Gillilan. Having excluded them from the purview of that clause, he apparently dismissed them from his thoughts and proceeded to dispose of whatever of his estate should remain after his previous bequests and devises. He did this by a further devise, to-wit: ''The remainder of my said estate, if any, both real and personal, shall be the property of and I do hereby give, devise and bequeath the same to my two sons, George W. and John D. Gillilan in equal parts, share and share alike.'' At the time this residuary clause was inserted in the will, Nathan was the owner of a right to reversion in the land which he had pre-

viously devised in clause five of his will. This reversion-ary estate was the subject of a valid devise. We have reached the conclusion it was the intention of the testator to devise it by the terms of clause nine of his will. The making of a will dealing with his entire es-tate and undertaking to dispose of all of it, disclosed his intention to die testate. Such is the logical and legal presumption which arises from the execution of a will purporting to dispose of the whole estate of a testator. In the instant case the testator devised his property among his children and heirs in the manner specified in the various clauses of that instrument and then added clause nine to cover any residue. He never for a moment forgot the interests of George, for after having provided for him and his future heirs by a large devise of lands, in a manner which he had reason-able grounds to expect would vest the fee in the ex-pected heirs, he continued to carry in mind the interests of George, and when he came to deal with the totality of his estate, he expressly provided that George and his son John should take what remained thereof in fee simple, share and share alike.

Our conclusion is that the terms and provisions of this will, taken in its full scope and purpose and in view of the attending circumstances, manifest that it was the distinct purpose and intention of the testator to dispose of all of his estate by the will in question, and by the residuary clause thereof to devise his reversion-ary rights, upon the lapse of the devise under clause five, to his two named sons, George W. and John D. Gillilan.

The judgment of the learned trial court was in accord with this view and, therefore, correct, and must be affirmed. It is so ordered.

PER CURIAM:—The foregoing opinion in Division is adopted by Court in Banc. All concur, *Graves, J.*, in result, except *Woodson, J.*, absent.