Jennie TRANTHAM, Helen Reagan, and Sarah Jane Bess, Appellants,

v.

William C. TRICE, Public Administrator for the County of Boone, State of Missouri, and Administrator of the Estate of William Rice Challis, Deceased, and George D. Peters, John D. Peters, and the unknown and unborn issue, heirs, grantees and successors of Helen Reagan, George D. Peters, Sarah Jane Bess and Jennie Trantham, Respondents.

Nos. KCD 29086 and KCD 29069.

Missouri Court of Appeals, Kansas City District.

May 1, 1978.

Motion for Rehearing and/or Transfer Denied June 12, 1978.

Application to Transfer Denied July 24, 1978.

Harry T. .Limerick, Jr., Columbia, for Jennie Trantham.

Dale Reaban, Kirkwood, for Helen Reagan.

William Brandecker, Columbia, for Sarah Jane Bess.

B. Daniel Simon, Columbia, for William C. Trice, Adm.

Raymond C. Lewis, Jr., Columbia, for George D. Peters and John Peters; Smith, Lewis & Rogers, Columbia, of counsel.

Before WELBORN, Special Judge, Presiding, HIGGINS, Special Judge, and PRITCHARD, J.

PRITCHARD, Judge.

This is an action to construe the last will and testament of William Rice Challis, deceased, who died on September 16, 1974, the will having been executed by him on June 26, 1943, and his wife, Margaret Challis, having predeceased him.

Item III of the will left to Helen Reagan $1.00. Item V of the will left the residue of the estate, "in equal shares to Madeline Peters, Ruth Jordan, Chloe Jordan, and Vera Wiedmeyer; but in case any of them shall have died in my lifetime leaving issue living at my death such issue shall take the share which his or her parent would have taken had such parent survived; and if no issue shall have survived said named devisee and beneficiary who died in my lifetime, then I give, devise and bequeath the share given to her to the individuals named in this item who do survive me, to be divided equally among them."

Ruth Jordan and Chloe Jordan predeceased testator without leaving issue.

Madeline Peters, who was a niece of testator's wife, predeceased him, but left two adopted children, respondents George D. Peters (who was adopted November 18, 1937) and John D. Peters (who was adopted May 21, 1936). Vera Wiedmeyer, a niece of testator, also predeceased testator leaving as her issue appellant, Sarah Jane Bess. Appellant, Helen Reagan (who was bequeathed $1.00) is a daughter of testator's brother, John Challis. Jennie Trantham was a sister of testator, not mentioned in the will. Jennie died during the pendency of this appeal, and Harry T. Limerick, Jr., executor of her estate, was substituted in her place as a party.

This appeal revolves around the construction of the will by the trial court, giving to respondents Peters one-fourth each of the residuary estate (a total of one-half), and each of appellants attack that interest awarded to the Peters.

Sarah Jane Bess presents her contentions in three aspects: First, that respondents Peters, having been adopted by Madeline, are not "issue"; secondly, that the construction of the will must avoid partial intestacy; and thirdly, that the anti-lapse statute, § 474.460, RSMo 1969, applies because Madeline Peters was not a relative of testator, hence the Peters, because of the lapse of the devise to Madeline, cannot take her share. Sarah Jane concludes that she "takes the entire residuary estate, or at worst, if the Peters are 'issue' [she] takes ¾ and the Peters divide ¼ of the residuary estate." As to the contention that the adopted children are not "issue" as that term is used in the will, Sarah Jane adopts the reasons presented in the brief of Jennie Trantham and Helen Reagan. The matter of whether respondents Peters, having been adopted, are "issue" will first be discussed.

As noted, the will was executed on June 26, 1943. It is the "general rule that whether an adopted child is embraced within the meaning of a described class of beneficiaries in a will is governed by the law in force at the time the will or other instrument was executed. (Citing cases and authority.)" *First National Bank of Kansas City v. Sullivan,* 394 S.W.2d 273, 281[7] (Mo. 1965), and cases and authority there cited. At the time of the execution of the will, and prior to the 1947 amendment to the adoption statute (now § 453.090, RSMo 1969), the Adoption Act of 1917 was in force (L.1917, p. 194). The 1917 Act provided, in essence, that all adopted children shall take, under intestate succession, as would a natural born child, unless the property is expressly limited to "heirs of the body." [The present statute, § 453.090, extends the inheritance and taking rights to property limited expressly to heirs of the body of parents by adoption.] Cases construing the 1917 Act as to the effect of adoption are these: *St. Louis Union Trust Co. v. Hill,* 336 Mo. 17, 76 S.W.2d 685 (1934), where the testator made his will and died a year later, leaving a life estate to his children with remainder to their "heirs at law." Eleven years later a son adopted his wife's two sons by her previous marriage. The testator's daughters contended that he intended to limit the remainder to those of his blood, and not to strangers. The court allowed the adoptive children to take their share of the remainder, saying that if the testator "did not want an adopted child to have any of his property he could have easily provided for such contingency in his will by *expressly limiting* his property to go to the bodily heirs of his son, but he did not do so." Loc. cit. 76 S.W.2d 689[7]. In *Brock v. Dorman,* 339 Mo. 611, 98 S.W.2d 672 (1936), James Brock, who died in 1915, devised land to his son, Samuel, " 'to have and to hold, during his natural life and after his death to go to his heirs.' " Samuel and his wife, 2½ years before his death, adopted 43 year old Frances Hickey by judicial decree. Frances deeded the land to her mother, Nora, the plaintiff, by warranty deed prior to Samuel's death, and by quit-claim deed thereafter. Defendants contended that during the life of James Brock, the law was that the adopted child did not inherit the estate of any member of the adopting family, other than the adopting parent, and so did not inherit the estate of the ancestors or collateral kin of the adopting parent. It was held that Frances Hickey was an "heir"

of the life tenant and took the remainder as such, the court stressing the difference between a devise to the testator's heirs, and a devise to the heirs of someone else. More directly in point is *Kindred v. Anderson*, 357 Mo. 564, 209 S.W.2d 912 (1948). There the testatrix died in 1900, a little over two years after executing her will. The will provided that "in the event that [a son] shall die without issue then the whole of my said property shall be divided equally among all of the above children." In 1934, the son adopted his wife's daughter by a previous marriage, and the son died in 1946, having outlived the other children of testatrix who were mentioned in the will. A nephew of the son brought the action to quiet title and for partition against the son's widow and adopted daughter contending that the defeasance clause "9" which provided that if the son die without issue meant *blood* issue or heirs of his body, whereas he left only his *adopted* daughter. The court noted, 357 Mo. at page 572, 209 S.W.2d at page 918[6–9], citing cases, that " 'The word "issue" as used in wills is an ambiguous term' ", and considered all of the circumstances in existence at the time of execution of the will, and held, page 920[15, 16], "We think there was sufficient evidence on the first branch of the case to show the testatrix intended that the survival of William by a child, either natural born or adopted, or a lineal descendant therethrough, would vest the unconditional fee title in him. Specifically, we hold Beulah Timberlake was William's 'issue'." In this connection the court noted at page 916 that Beulah was the son's "issue" at the time of his death because she had been adopted in 1934 under the liberal provisions of Sec. 9614 [Laws Mo.1917, p. 134]. See also *St. Louis Union Trust Co. v. Greenough*, 282 S.W.2d 474 (Mo.1955), where, in construing a 1908 will to determine whether an adopted child was a descendant of testator's granddaughter, and in ruling for the adopted child, the court noted that the testator specifically devised part of his estate of strangers to his blood, and therefor clearly demonstrated that he did not intend for only his blood relatives to take, and also

there was nothing found in the will indicating an intention to exclude adopted children. See also *Stifel v. Butcher*, 487 S.W.2d 24 (Mo.1972), allowing adopted children to take under an 1897 trust under the designation of "descendants", following the Greenough rule allowing their inclusion since the language used was not sufficiently expressive of an intention to exclude them. Here the devise to Madeline Peters, a non-relative of testator, indicated a clear intent that the estate should not be limited to blood relatives, and there was no expressed intention to exclude adopted children.

In this case, the evidence shows that both the Peters, the adopted sons of Madeline Peters, had been adopted when testator made his will, and that he knew the sons. Dr. John F. Townsend testified that he grew up with John and George Peters, and that through them he became acquainted with testator, who, after the Peters grew up, would always inquire how they were doing. Testator kept pictures of the two sons on display in his home. George Peters testified that he and his brother began visiting testator at an early age and that they continued visiting him regularly at his home and their own. They called him Uncle Rice. Testator gave U. S. savings bonds to all three of George's children. Photographs of the two sons with testator were in evidence, taken from the time they were small until testator's death. There was also a movie of the three. Under the foregoing cases, these facts showing that the Peters were well known to testator, whose will was executed after they were adopted, and the liberal provisions of the 1917 Adoption Act that "Said child shall thereafter be deemed and held to be for every purpose, the child of its parent or parents by adoption, as fully as though born to them in lawful wedlock. Said child * * * shall be capable of inheriting from, and as the child of said parents as fully as though born to them in lawful wedlock", there can be no doubt that the Peters are "issue" of Madeline Peters. The contentions of Sarah Jane Bess, Jennie Trantham and Helen Reagan as to this matter are ruled against them.

■ Appellants Trantham and Reagan contend that the testator intended to die intestate if all four of the specifically named devisees [Madeline Peters, Ruth Jordan, Chloe Jordan and Vera Wiedmeyer] predeceased him, which they did, and that the testator's will required at least one of them to survive him. The will here deals with *all* the residuary estate by its Item V in the event testator's wife should predecease him, which was the fact. In that posture the rule is that testator will be presumed to have intended to die testate. *Gillilan v. Gillilan,* 278 Mo. 99, 212 S.W. 348, 352[9] (1919); *Shaw v. Wertz,* 369 S.W.2d 215, pages 218, 219, and cases there cited (Mo.1963). It is also true that the duty of a court in construing a will is to determine the intent of the testator, § 474.430, RSMo 1969; *St. Louis Union Trust Company v. Hill,* 336 Mo. 17, 76 S.W.2d 685, 686[5] (1934); *Shaw v. Wertz,* supra, loc. cit. 369 S.W.2d 217[2, 3] Adverting to the will it is apparent that testator gave one-fourth each to the above specifically listed persons. Then, first as a contingency, he provided that if any of them shall have died in his lifetime leaving living issue at his death, such issue shall take the share which his or her parent would have taken had they survived. As above ruled, the adopted children of Madeline Peters were her issue who survived the testator. Chloe and Ruth Jordan both predeceased testator without issue. In that event, another substitutionary gift over was made to the issue of the predeceased persons named in Item V who did survive him. Thus, testator did not intend to die intestate unless all four of the specifically named devisees and their issue predeceased him. Also, as is evident, testator left his sister, Jennie Trantham, out of the will, and gave to Helen Reagan, his niece, only $1.00, thus evidencing an intent to exclude her from substantial participation in the estate. From wording of the entire will, it must be held that testator intended that the issue surviving him of the four named persons who predeceased him should take a per stirpes distribution of the estate, that is, by representation of their parent; "children take among them the share which their parent would have taken, if living." 3 Bouvier's Law Dictionary, page 2558. This disposes of the alternative contentions of Sarah Jane Bess that she is entitled to all the residuary estate, or that she takes three-fourths and the Peters take one-fourth. By a per stirpes distribution, Sarah Jane Bess takes one-half through her mother, Vera Wiedmeyer, and the two Peters children take the other one-half through their adoptive mother, Madeline Peters, as ruled by the trial court.

■ Sarah Jane Bess makes the further contention that the anti-lapse statute, § 474.460, operates to cut out the Peters because their adoptive mother, Madeline Peters, was not related to testator and predeceased him. Ordinarily, that would be true, but it is a general rule also that "* * * a testator may, by express provisions of his will, prevent a lapse in case of the death of a legatee or devisee before the testator * * *." 96 C.J.S. Wills § 1216a, p. 1053. And he may do this "* * * by the expression of such intention and a provision for the substitution or succession of some other recipient in case of the intermediate death of the first named donee." 96 C.J.S. Wills § 1216b, p. 1053. See also 80 Am.Jur.2d, Wills, § 1665, p. 721. Here, the testator has made an express substitution of the *issue* of his named beneficiaries, thus showing an intent that the gift should not lapse.

The judgment is affirmed.

All concur.