## Stephen Pinkney v. J. D. Weaver.

### Gen. No. 4,361.

1. STATUTE OF LIMITATIONS—*when payment of interest tolls running
of.* The payment of interest by a life tenant, who likewise holds the
conditional fee in reversion, will toll the running of the statute with
respect to the right of foreclosure as against those not *in esse* at the time
of such payment who had a contingent interest in the premises in
question.

2. PARTIES—*who necessary, to chancery proceeding.* All parties who
are legally or equitably interested in the subject-matter of the suit are
necessary parties to a chancery proceeding, but the interest must be a
present, substantial interest as distinguished from a mere expectancy or
future contingent interest.

3. DECREE—*who bound by, in chancery.* A decree in chancery to
which all parties in interest who were *in esse* at the time the proceedings
became *lis pendens,* is binding upon parties in interest subsequently
coming into being.

4. COLLATERAL ATTACK—*when, cannot be made upon chancery decree.*
Where the tribunal rendering such a decree has full and complete juris-

diction of the subject-matter and of the persons of the parties in interest, the same is not open to collateral attack for mere errors.

Action of assumpsit. Appeal from the Circuit Court of Peoria County; the Hon. NICHOLAS E. WORTHINGTON, Judge, presiding. Heard in this court at the April term, 1904. Affirmed. Opinion filed August 24, 1904.

PINKNEY & McROBERTS, for appellant.

STEVENS & HORTON, for appellee.

MR. JUSTICE VICKERS delivered the opinion of the court.

On the 28th of January, 1902, J. D. Weaver entered into a written contract with Stephen Pinkney by which he agreed to sell and convey a good and indefeasible title to the west half of the southwest quarter, section twenty-one, township twenty-seven, range seven, east of the 3rd P. M., Livingston county, except one acre which had been previously conveyed for a cemetery lot, for $6,715. He was to furnish an abstract showing that he was the owner in fee of the premises. Pinkney paid $300 in cash as earnest money to bind the contract which was to be refunded in case Weaver failed to furnish an abstract showing that he was the owner in fee of an indefeasible title. Weaver furnished an abstract which was rejected by Pinkney because he claimed it did not show such title as the contract called for and thereupon Pinkney demanded the return of the $300, which Weaver refused, because he claimed it was forfeited to him under the contract; he insists that the abstract furnished showed him to be the owner in fee of the premises.

The trial below was had before the court, a jury being waived, upon an agreed state of facts, and a finding for the defendant, and the plaintiff appeals. The whole controversy turns upon questions of law raised upon the sufficiency of Weaver's title, as shown by the abstract furnished by him. It will therefore be necessary to set out portions of this abstract and certain agreed facts, to present the questions on this record.

(1) It is agreed that on the first day of April, 1884,

Joseph Verkler was the owner in fee of the premises in question. (2) On the said date Joseph Verkler and wife executed and delivered a trust deed conveying these premises to H. W. Weaver, as trustee, to secure a note for $1,200 payable to Taylor & Weaver, due April 1, 1889, bearing seven per cent interest, payable annually. (3) On the 24th day of November, 1884, Joseph Verkler and wife executed to their granddaughter, Ada Roggy, a quit-claim deed to all their interest in the premises, which was duly filed for record on January 21, 1885; said deed contains the following *habendum:* "To her use and the use of the heirs of her body during her or their natural lives; but if she dies without issue, or if she shall have heirs, the issue of her body, and such heirs die before reaching their majority, the said premises herein described shall revert to the grantors and their heirs. This conveyance is not to take effect until the decease of both the grantors." (4) It is also agreed that within one year after making this deed Joseph Verkler and his wife both died and that Ada Roggy then went into possession, received the rents, and paid the interest on the $1,200 note until April 1, 1899, a period of ten years after the note matured by its terms. (5) On January 15, 1889, Ada Roggy procured a quit-claim deed to these premises from all the other surviving children of Joseph Verkler. (6) On September 14, 1899, ten years, five months, and fourteen days after the note came due, and the right to foreclose the trust deed had accrued, appellee and the trustee filed a bill in the Circuit Court of Livingston county to foreclose the trust deed. (7) Several years before the bill was filed to foreclose the trust deed Ada Roggy had intermarried with one James M. Fish with whom she was living at the time appellee tendered his deed and abstract to appellant. She had also at that time two children living, aged about six and ten years respectively. Ada Fish, her husband, and their two minor children were all made defendants to the bill, and were duly served. A *guardian ad litem* was appointed for the infant defendants, who filed a formal answer to the bill. The adults were defaulted;

the cause proceeded in the usual manner to a final decree of foreclosure sale, and the premises not having been redeemed a master's deed was made to appellee on May 27, 1901.

The sole question presented by this record is, did appellee obtain an indefeasible title by the foreclosure proceedings?

Under the deed from Joseph Verkler and wife to Ada Roggy, it is clear that a life estate was created in the grantee, limited upon the life estate of the grantors. Had grantee, Ada Roggy, died before the grantors and without issue, the deed would have had no effect on this title whatever. After the expiration of the life estate reserved by the deed to the grantors, the life estate of Ada Roggy gave her the right to the immediate enjoyment of the premises. This deed, however, did not dispose of the entire estate; a contingent remainder in fee was created in the bodily heirs of Ada Roggy, but she had no issue at the time of the grant, and therefore the estate of inheritance was in the grantor, and after his death in his heirs, subject only to the particular estate of the life tenant, and subject to be defeated upon the happening of the contingency which would vest the fee in the remainderman. Whenever a life estate is created, and the fee is disposed of by a contingent remainder, the fee remains with the grantor, or passes as intestate estate to his heirs unless otherwise disposed of. Harrison v. Weatherby, 180 Ill. 418, and cases there cited. The heirs of Joseph Verkler took the reversion in fee in these premises by descent upon his death, subject to the condition of being divested upon the contingent remainderman coming into his estate. This doctrine is well established as applied to wills, and we see no reason why it is not equally applicable to grants. Peterson v. Jackson, 196 Ill. 40; 2 Blackstone Com., 110, 113; 4 Kent's Com., 221; Butler v. Huestis, 68 Ill. 594; Lewis v. Pleasants, 143 Ill. 271; Fearne on Remainders, Ch. 6, page 354. It is more logical to say that the fee in such cases remains with the grantor and passes to his heirs upon his death, than to say

the fee has passed out of the grantors, when there is no person *in esse* capable of receiving it, and that the estate of inheritance is roaming in space, like a comet, awaiting the determination of future events to call it back to the grantor or settle it upon its new owner. It is a maxim of the common law that a fee cannot be in abeyance, and if this is true the fee here was in the grantor and descended to his heirs upon his death.

On January 15, 1889, after the death of Joseph Verkler, and before any child was born to Ada Roggy, she received a conveyance from all the children of the grantor. By this deed she became the owner of the reversion cast on the heirs by the death of Joseph Verkler. It is true the estate in reversion was subject to the condition that the birth of a child or children would defeat it. She could not convey the entire estate so as to defeat the remainderman, (Frazer v. Board of Supervisors of Peoria Co., 74 Ill. 282,) but had she died without issue, after obtaining this deed, it is clear the land would have descended to the heirs of Ada Roggy. But whether we are right or not, upon the general doctrine of the fee remaining in the grantor when he makes a deed to one and his bodily heirs without limitation, in the case at bar the deed expressly provides for the reversion, in case of failure of issue, or in case she has issue who died before attaining their majority, to revert to the grantor and his heirs. This clause makes it clear that the grantor had in mind the possibility that the contingency upon which the remainder was to vest might not happen, and he sought to provide for it by adding the above clause. Having merged in her the life estate and whatever interest in reversion she obtained by her deed from the heirs of Joseph Verkler, by her deed of January 15, 1889, she paid interest on the $1,200 loan until April 1, 1899. Her first child was not born until 1892, so that there was a period of three or four years she paid interest during which she was the only person in being who had any interest in paying either the principal or interest on this loan. Did her payment of interest under this state of facts have the effect of keeping the note

alive and prevent the running of the Statute of Limitations as against her children? Appellant insists that it did not, and cites and relies on the case of Ætna Life Ins. Co. v. McNeely, 166 Ill. 540, where it is held that the payment of interest by the life tenant upon a mortgage will not arrest the running of the Statute of Limitations as to the owner of the fee. Counsel for appellee, while conceding that the case above cited is an authority binding upon this court, still has suggested that the case is distinguishable from the case at bar. In the McNeely case Fanning owned the land which was mortgaged; he died leaving Martha Fanning, his widow, who had a homestead in the premises and dower in the residue, and children who owned the fee; the widow paid interest on the mortgage after the death of her husband, without the knowledge or consent of the children. Under these facts the holding is made that the payment by the widow would not toll the statute as to the children. The grounds upon which the holding there seems to rest is that the interest of the widow was wholly distinct from the vested remainder in the children. In the case at bar the remainder was contingent, until after the birth of the first child to Ada Roggy, and as we have sought to show, Ada Roggy held the life estate and reversion until the remainder vested, and if the payment of interest made by her during this time had the effect of tolling the statute as to the remainder not yet vested, then the suit to foreclose the mortgage was commenced within ten years from the date of her last payment next before her first child was born. Whatever may be the effect of the payment made after the birth of her children, we are of the opinion that payment made by her, while she held the life estate and the conditional fee in reversion, operated to keep the note and mortgage alive, so that the bill filed to foreclose the mortgage on September 14, 1899, was filed before the bar of the statute became complete. Had a bill been filed to foreclose the mortgage after Ada Roggy acquired the interest of the Verkler children, and before the birth of her first child, she and her husband would have

been the only necessary or proper parties defendant; and a decree of foreclosure, sale and deed would be binding or subsequently born children of the life tenant.

Story in his Equity Pleadings, section 145, says : " And, as it is sufficient to bring the first tenant in tail before the court, if in being, whether he be plaintiff or defendant in the suit, so, if there be no such tenant in tail in being, the first person in being, entitled to the inheritance, should be made a party; and if there be no such person in being, then the tenant for life, as in such a case, the decree made will bind the other persons not in being." This rule appears to have received the approval of our Supreme Court in American Bible Society v. Price, 115 Ill. 623.

All parties who are legally or equitably interested in the subject-matter of the suit are necessary parties in a chancery proceeding but the interest must be a present, substantial interest as distinguished from a mere expectancy or future contingent interest. Green v. Grant, 143 Ill. 61; Temple v. Scott, 143 Ill. 290. It is so where the interest is vested, although the possession is postponed by the existence of an intermediate estate. Nevitt v. Woodburn, 190 Ill. 283.

It is likewise well settled that the decree that was in fact rendered after the birth of the two children to Ada Roggy will be binding upon any other children which may be born to her subsequent to the entry of the decree. Story, Equity Pl., sec. 145. If a decree would be binding upon the subsequently born children rendered upon service on the mother, for the reason that she represented, for the time being, all the interest in the land, it would seem to be equally logical to say that her voluntary payment of interest would bind the remainderman and toll the Statute of Limitations.

There is, however, another reason why the title conveyed to appellee by the master's deed must be held to be an indefeasible estate in fee. The Circuit Court of Livingston County had full and complete jurisdiction of the subject-matter and of the persons of all the parties in interest and

Pinkney v. Weaver.

its decree foreclosing the mortgage is not open to a collateral attack, however erroneous it may be. It is a general rule that when the court has jurisdiction of the parties and the subject-matter in a particular case its judgment is conclusive and is not open to collateral impeachment by parties or privies. 1 Black on Judgment, section 345; People v. Brislin, 80 Ill. 428; Blake v. People, 109 Ill. 504; Gage v. Parker, 103 Ill. 528; Clark v. People, 146 Ill. 348. This rule applies to decrees to foreclose mortgages, as well as to all other judgments of courts of record of general jurisdiction. Reedy v. Camfield, 159 Ill. 254.

The fact that the children of Ada Fish were minors at the time of the rendition of the decree makes no difference in this regard. A decree against infant defendants in a case where the court has jurisdiction both of the parties and subject-matter is protected from collateral attack the same as the judgment against an adult. Allison v. Drake, 145 Ill. 500; Lloyd v. Kirkwood, 112 Ill. 329. Subject to the right of the infant to bring a bill of review for error or to file a bill to impeach the decree for fraud or sue out a writ of error at any time within five years after attaining its legal majority, there is no difference between a decree, when rendered by a court of competent jurisdiction, against infants and adults. Allison v. Drake, *supra.*

The Circuit Court of Livingston County having jurisdiction to render the decree of foreclosure, and having jurisdiction by service of summons upon all persons who had or claimed to have any interest in the premises, and this decree being followed by a sale and master's deed, and these facts all appearing in the abstract tendered by appellee, shows him to be the owner in fee of an indefeasible title to the premises, and the appellant having refused to accept said title is not entitled to recover the $300 of earnest money paid on his contract.

The judgment is therefore right and will be affirmed.

*Affirmed.*