HATTIE COLLINS v. WALTER WHITMAN et al.; ALVERDA SIDDENS, Intervener, Appellant.

Division Two, June 25, 1920.

1. **WILL: Intention.** The fact that the testator gave to his son a life estate, and in unmistakable terms declared in his will that the plaintiff (said son's then wife) or any child of which she might become the mother should take no interest whatever in his estate, is to be considered in determining whether said after-born child, as remainderman, took any interest in the estate, and whether the plaintiff, by conveyance from said child, is entitled to recover any interest therein.

2. ———: **Vested Estate.** In the absence of an expressed intention to the contrary, the law favors the vesting of estates at the earliest possible time, and immediately upon the testator's death. Where there is a doubt as to whether the remainder is vested or contingent, the courts will construe it as a vested estate.

3. ———: ———: **Lapsed Remainder.** Where the remainder lapses, it becomes intestate property, and may under given circumstances vest in the life tenant.

4. ———: ———: ———: **Intestate Property.** Where the will gave a life estate to an only child and upon his death "it is my will that said property shall pass to and vest absolutely in such child or children and heirs of my said son, James Harvey Siddens, as shall be born to him by any woman, save and except any child or children born of his present wife, Hattie Siddens," it being "my will that neither the said Hattie or any child of which she may become the mother shall have or receive any interest whatever in my estate," the son, the said James Harvey, took and continued to hold the remainder, as intestate property, subject to be divested upon the birth of a child by some other woman than Hattie; and the said son having been divorced from Hattie and having married Alverda, by whom he had no children, the remainder became inoperative and vested in him by the Statutee of Descents, and his will, by which he gave five dollars to his child by Hattie and the rest of his estate to Alverda, vested the entire estate in Alverda, and the said child of Hattie did not take the said remainder created by the will of the son's father. [Following Gillilan v. Gillilan, 278 Mo. 99.]

Appeal from Gentry Circuit Court.—*Hon. John M. Dawson*, Judge.

REVERSED AND REMANDED (*with directions.*)

*D. D. Reeves* and *J. W. Peery* for appellant.

(1) Where a testator, as in this case, carves out a particular estate for life, with a contingent remainder or executory devise over, the reversion or interest not so devised remains in him, and (if there is no residuary clause in his will) passes and vests at his death in his heir at law, as in cases of intestacy. This rule and doctrine is established by all of the authorities. There has in the past been some difference of opinion as to the ap-

plication of the rule to a common-law deed of conveyance, but never as to a disposition by will. Stockwell v. Stockwell, 262 Mo. 678; Gillilan v. Gillilan, 278 Mo. 99; 23 R. C. L. p. 518, secs. 56-57; Bigley v. Watson, 98 Tenn. 353, 39 S. W. 525, 38 L. R. A. 679; Craig v. Warner, 5 Mackey, (D. C.) 460, 60 Am. Rep. 381; 4 Kent's Comm. (9 Ed.) 283 (*257); Tiedeman, Real Prop. (2! Ed.) secs. 385, 411; 1 Fearne, Rem., p. 351; 1 Schouler on Wills, sec. 545; 2 Underhill on Wills, sec. 874, p. 1330; Peugnet v. Berthold, 183 Mo. 64; 2 Washburn, Real Prop. (6 Ed.) secs. 1509, 1510, 1611; 3 Washburn, Real Prop. (6 Ed.) sec. 2246; Hopkins, Real Prop., p. 306; Ryan v. Monaghan, 99 Tenn. 338, 42 S. W. 144; Stockwell v. Bowmen, 67 S. W. (Ky.) 379; Chappin v. Knot, 67 N. E. 833; Coots v. Yewell, 25 S. W. (Ky.) 525, 26 S. W. 179; Peterson v. Jackson, 63 N. E. 646; Kamarrer v. Kamarrer, 281 Ill. 587, 117 N. E. 1027; 14 Cyc. 33; 18 C. J. pp. 821, 822, and notes. (2) The rule stated in the preceding paragraph, as to the vesting of the reversion of the fee at the death of testator in his heir, is not affected by the fact that the person to whom the estate is given for life, may be the only child and heir of the testator; in such case (like the one at bar) the fee in reversion vests in such only child and heir, even though he is the life tenant under the will. Peugnet v. Berthold, 183 Mo. 64; Harrison v. Weatherly, 180 Ill. 418; In re Kenyon, 17 R. I. 149; Stokes v. Van Wyck, 83 Va. 724; Gilman v. Stone, 123 Ky. 137; Bigley v. Watson, 98 Tenn. 353, 38 L. R. A. 679; Loring v. Eliot, 16 Gray (Mass.), 574; 23 R. C. L. p. 1101, sec. 5; Bond v. Moore, 236 Ill. 576, 19 L. R. A. (N. S.) 540. (3) The law favors the vesting of estate, and in the absence of words expressing a clear intent to the contrary, the estate will be construed to vest at the earliest possible time, and immediately upon the testator's death. Tindall v. Tindall, 167 Mo. 255; Deacon v. Trust Co., 271 Mo. 687; Henderson v. Calhoun, 183 S. E. 586. (4) After Mary E. Siddens, widow of James M. Siddens, had filed her renunciation of

the will, and her election to take a child's part of the estate, she became the absolute owner of one-half of the land, and the will took effect and disposed of only the other half. Lilly v. Menke, 143 Mo. 137.

*Charles E. Gibbany* and *Lucian J. Eastin* for respondent.

(1) By the will James Harvey Siddens took a life estate. The remainder to the unborn children of James Harvey by any woman except Hattie was contingent. As no children were ever born, the remainder never vested and, as there was no other disposition of the property, it passed upon the death of the life tenant to the heir of the testator as intestate property. (a) James Harvey Siddens took only a life estate. Secs. 578, 583, R. S. 1909; Jones v. Waters, 17 Mo. 578; Emison v. Whittlesey, 55 Mo. 254; DeLassus v. Gatewood, 71 Mo. 371; Waddell v. Waddell, 99 Mo. 338; Chew v. Keller, 100 Mo. 362; Rodney v. Landau, 104 Mo. 251; Dickerson v. Dickerson, 211 Mo. 483; Buxton v. Kroeger, 219 Mo. 224; Armour v. Tully, 226 Mo. 646; Warne v. Sorge, 258 Mo. 171. (b) After the life estate, the will created a contingent remainder. Remainders are vested or contingent. "Contingent or executory remainders (whereby no present interest passes) are where the estate in remainder is limited to take effect, either to a dubious and uncertain person, or upon a dubious and uncertain event, so that the particular estate may chance to be determined and the remainder never take effect." 2 Blackstone, 169; and cases cited above. The remainder was therefore contingent, and if a child or children had been born to James Harvey Siddens by any woman except Hattie, the remainder would have vested immediately in interest in such child, and in possession upon the death of the life tenant. These two estates were all that were created by this will. (c) When the particular estate fell in, and it was thus determined that the remainder failed, the estate passed to the heir of the original donor. Cook v.

Hammond, 4 Mason, 467, Fed. Case No. 3159; Bingham on Descents, p. 84; Barnitz's Lessee v. Carey, 7 Cranch. 456. In the present case the child of James Harvey Siddens and the only direct descendant and next of kin of the testator claims the estate. Sullivan v. Garesche, 229 Mo. 509; W. Va. Ry. Co. v. Epling, 73 S. E. 51; Perry v. Strawbridge, 209 Mo. 631. (2) The language of the will is not distinguishable in legal principle from the instruments in judgment in the following cases: Emison v. Whittlesey, 55 Mo. 258; DeLassus v. Gatewood, 71 Mo. 371; Aubuchon v. Bender, 44 Mo. 560; Owen v. Eaton, 56 Mo. App. 563; Gates v. Siebert, 157 Mo. 255; Dickerson v. Dickerson, 211 Mo. 483; Buxton v. Kroeger, 219 Mo. 224.

RAILEY, C.—This suit was instituted in the Circuit Court of Gentry County, Missouri, on July 7, 1917. It is an action in ejectment to recover possession of the undivided one-half of certain lands located in said county and described in the petition. The date of ouster is named as December 8, 1916. The monthly value of the rents and profits of said premises is sixty dollars, etc.

Defendants Walter Whitman and Fred Whitman answered, and admitted that they are in possession of said land. They deny every other allegation in plaintiff's petition.

Appellant Alverda Siddens filed in said cause an application to become a party defendant, alleging therein that she was the owner of said real estate and that defendants had no interest therein except as tenants, etc. Said application was sustained, and Alverda Siddens filed herein her answer and cross-bill, denying each and every allegation of the petition. For further answer and cross-bill, she alleged therein that she is the owner in fee of the real estate described in the petition; that the plaintiff herein claims some title, estate and interest in said estate, the nature and character of which is unknown to this defendant, but the latter alleges that said claim of plaintiff is adverse and prejudicial to this de-

fendant. Thereupon, the court is asked to try, ascertain and determine the estate, title and interest of the parties plaintiff and defendant herein, severally, in and to said real estate, and to grant this defendant general relief, etc.

Other parties, upon their own application, were permitted to be joined as defendants herein. They filed an answer similar to that of defendant, Alverda Siddens.

On December 19, 1917, said cause was reached for trial, a jury was waived, and the cause submitted to the court upon an agreed statement of facts. It appears from the latter, that James M. Siddens, of the county aforesaid, is the common source of title, and died on June 6, 1911, the owner of the land in controversy, with other land. He left, as his only heir, a son, James Harvey Siddens. The will of James M. Siddens was probated in Gentry County, Missouri, on June 15, 1911, and reads as follows: ⸜

"I, James Siddens of Gentry County, Missouri, do make and publish this my last will and testament.

"1st. I give, bequeath and devise to my beloved wife, Mary E. Siddens, and my son, James Harvey Siddens, all property, real, personal and mixed of which I may die seized or possessed, to have and to hold during their natural life, or so long as they or either of them may live, and at the death of either one of the said parties the whole of said estate shall pass to and vest in the survivor, whichever that may be, who shall have, hold and enjoy the same, for and during his or her natural life, and upon the death of both my said wife and my said son, it is my will that said property shall pass to and vest absolutely in such child or children and heirs of my said son, James Harvey Siddens, as shall be born to him by any woman, save and except any child or children born of his present wife, Hattie Siddens. It is my will that neither the said Hattie Siddens or any child or children of which she may be or become the mother shall have or receive any interests whatever, of, in or to my said estate, or any part or parcel thereof.

"I hereby appoint my wife Mary E. Siddens and my son James Harvey Siddens, my executors, without bond, of this my last will and testament.

"In witness whereof, I have hereunto set my hand this July 9, 1898."

Thereafter, Mary E. Siddens, wife of the above testator, filed her renunciation of the provisions of said will in her favor, and elected to take a child's part.

James Harvey Siddens was married to defendant, Alverda Siddens, on October 17, 1900, and no children were born to James Harvey Siddens, except Opal Siddens Morrow, hereafter mentioned. James Harvey Siddens died testate in Gentry County, Missouri, on March 17, 1916, and thereafter his will was admitted to probate, March 23, 1916, in which he devised and bequeathed $5 to his daughter, Opal Siddens (now Opal Siddens Morrow), and gave all the remainder of his property, real, personal and mixed, to his wife, the appellant, Alverda Siddens. James Harvey Siddens was previously married to Hattie Bare (now Hattie Collins, the plaintiff herein), on June 21, 1898, but they never lived together as husband and wife. Opal Siddens Morrow is the only child of James Harvey Siddens and Hattie Siddens (now Hattie Collins), and was born after their marriage. On September 17, 1900, James Harvey Siddens and Hattie Siddens were divorced.

On November 14, 1916, Opal Siddens Morrow conveyed to the plaintiff, Hattie Collins, the land in controversy, with other land heretofore mentioned.

The other defendants named in this record, save and except Alverda Siddens, constitute all of the collateral heirs of James M. Siddens, they being his brother, nephews, nieces, etc.

On June 21, 1898, and prior to the divorce of James Harvey Siddens, his father, James M. Siddens, and his mother, Mary E. Siddens, made a settlement upon said Hattie Siddens, who was then his wife, by conveying to her certain real estate, and she executed a written instrument, releasing the said James Harvey Siddens and his

estate; and agreed therein to support and maintain the child to be born.

The defendant Alverda Siddens asked, and the court refused four instructions, numbered one to four inclusive, which will be considered later.

On September 17, 1918, the court found the issues in favor of plaintiff, and rendered its judgment accordingly. The defendant Alverda Siddens on the date last aforesaid filed herein her motions for a new trial and in arrest of judgment. Both motions were, on the above date, overruled, and the cause duly appealed by her to this court. None of the other defendants appealed.

I. In passing upon the merits of this controversy, we must not lose sight of Section 583, Revised Statutes 1909, which reads as follows: "All courts and others concerned in the execution of last wills shall have due regard to the directions of the will, and the true intent and meaning of the testator, in all matters brought before them."

*Intention.*

It is perfectly manifest, from reading the will of James M. Siddens, heretofore set out, that he intended by said instrument to dispose of all his property, real, personal and mixed, as there is no residuary clause therein. It is equally as clear from said instrument, that he did not intend this plaintiff, or any child of hers, should take any part of his estate, which he was attempting to dispose of by his will. It is no less certain, that if the decree of the lower court in favor of plaintiff is permitted to stand, it passes the estate in controversy to the very individuals whom James M. Siddens, by the above instrument, declared should not take it. He had already made a settlement upon plaintiff, for the benefit of herself and daughter, Opal Siddens Morrow and, hence, provided in said will, "that said property shall pass to and vest absolutely in such child or children and heirs of my said son, James Harvey Siddens, as shall be born to him by any woman, save and except any child or children born of his present wife, Hattie Siddens. It is

my will that neither the said Hattie Siddens or any child or children of which she may be or become the mother shall have or receive any interests whatever, of, in or to my said estate, or any part or parcel thereof.''

On the other hand, testator attempted to bestow upon his son, James Harvey Siddens, and his child or children, if any were born capable of receiving it, the entire estate sought to be conveyed. The mere fact that James Harvey Siddens was given a life estate by the will, under the circumstances aforesaid, is no indication, that testator was averse to said son taking the estate in remainder, at testator's death, subject to be divested, should a child or children of the son be born, capable of receiving the property under the will.

Keeping in mind these general observations, which should be considered in determining the merits of this controversy, we pass to other questions involved.

II. It is well settled, upon both principle and authority, that the law favors the vesting of estates, in the absence of an expressed intent to the contrary, at the earliest possible time, and immediately upon the testator's death. [Jones v. Waters, 17 Mo. l. c. 589-590; Collier's Will, 40 Mo. l. c. 321; Chew v. Keller, 100 Mo. l. c. 368; Byrne v. France, 131 Mo. l. c. 646-7; Tindall v. Tindall, 167 Mo. 218; O'Day v. Meadows, 194 Mo. 588; Heady v. Hollman, 251 Mo. l. c. 638; Deacon v. Trust Co., 271 Mo. l. c. 687-8; Henderson v. Calhoun, 183 S. W. l. c. 586; Huntington Real Estate Co. v. Megaree, 217 S. W. l. c. 303-4; Dunbar v. Sims, *ante,* 356; 23 R. C. L. sec. 67, pp. 525-6; 2 Underhill on Wills, sec. 861.] In Collier's Will, 40 Mo. l. c. 321, WAGNER, J., said:

*Vested Estate.*

''As wills are generally dissimilar, and one can hardly to found precisely like another, cases are rarely to be met with which are directly apposite, so as to be controlling authority in any new case which may arise. But there are certain rules of law which have grown up and become firmly fixed in the interpretation of wills,

which no court is at liberty to disregard, unless the language of the testator, in making the devise, plainly requires it; and one of these rules is, that all estates shall be considered vested rather than contingent. The law is said to favor the vesting of estates, the effect of which principle seems to be, that property which is the subject of any disposition, whether testamentary or otherwise, will belong to the object of the gift immediately on the instrument taking effect, or so soon afterwards as such object comes into existence, or the terms thereof will permit.''

In the later case of Chew v. Keller, 100 Mo. l. c. 368, Judge BLACK, speaking for the court, said:

''The law favors vested estates, and, where there is a doubt as to whether the remainder is vested or contingent, the courts will contrue it as a vested estate. . . . The expressions that they, Levin Baker and others, are not to take possession of the property devised 'until the death of Jemima Lindell,' and that 'upon her death' the devisees shall take the parts as tenants in common, all relate to the times when the devisees shall have possession, and have nothing to do with the vesting of the estate.''

The other cases cited under this proposition, are in full accord with the views above expressed.

(a) It is admitted that testator's wife, Mary E. Siddens, upon the death of her husband, renounced the provisions of his will giving her a life estate in said land, elected to, and did, take a child's part and, hence, became the owner of the undivided one-half of the real estate in controversy. It is likewise admitted that testator, James M. Siddens, died in Gentry County, Missouri, on June 6, 1911, leaving, as his only heirs, said James Harvey Siddens and Mary E. Siddens, the widow of testator. Said will was duly probated June 15, 1911. Said Mary E. Siddens and James Harvey Siddens were appointed executors without bond.

James Harvey Siddens was married to defendant, Alverda Siddens, on October 17, 1900. No children were

ever born to said James Harvey Siddens, except Opal
Siddens Morrow, the daughter of plaintiff herein.
James Harvey Siddens died in Gentry County, Missouri,
on March 17, 1916, and left a will which was duly pro-
bated, March 23, 1916. He gave his daughter, Opal Sid-
dens Morrow, $5, by said instrument, and conveyed all
the remainder of his estate to his wife, Alverda Siddens,
the appellant in this cause.

Said Opal Siddens Morrow conveyed the real estate
in controversy to plaintiff by quitclaim deed, on Novem-
ber 14, 1916.

Keeping in mind the foregoing facts, and principles
of law, we will proceed to a consideration of the merits
involved herein.

III.  According to our conception of the law which
should govern this case, it is not necessary for us to
enter into any extended consideration of the common
law, relating to estates tail, nor the statutes, referred to
by counsel in their respective briefs, for it is conceded
in the foregoing record that James Harvey Siddens sim-
ply acquired a life estate in the real estate aforesaid,
by the terms of his father's will.

We understand respondent to contend that James
Harvey Siddens, upon the death of his father, was sim-
ply a life tenant under the will of the latter; that he
never acquired any other or different interest in the
property here involved; that upon the death of said
James Harvey Siddens, his daughter, Opal Siddens
Morrow, became the owner of the undivided one-half of
said real estate, as heir of her grandfather, as intestate
property, under the statute, without any reference to
the wills of her father and testator, and that she con-
veyed the interest thus inherited, to this plaintiff.  On
the other hand, we understand appellant contends that
James Harvey Siddens was given a life estate in said
property by his father's will, which contains no residua-
ry clause; that upon the death of testator, James M.
Siddens, the life tenant aforesaid, who was his only heir

at law, under the Statute of Descents, became vested with the estate in remainder in said land, as intestate property, subject to be divested of same, if a child or children were born thereafter, as provided in testator's will, and that said estate in remainder, was never divested by the birth of any child or children by any other woman than this plaintiff, as provided in said will; that by reason of the facts, aforesaid, appellant became the owner of the undivided half interest in said real estate by virtue of the will of her husband, James Harvey Siddens.

The fee simple title to the real estate in question remained in testator up to the time of his death. Upon the happening of the last event, the son became vested with a life estate in said property. What became of the estate in remainder, held by testator at the time of his death? It was known as a matter of law, at that time, that if the remainder should become inoperative for want of a taker, it would still remain in existence, but become intestate property and, as such, would pass to James Harvey Siddens, as the only heir at law of testator. The son did not take the remainder by virtue of the will, but took the place of his father, as heir of the latter, under the Statute of Descents, and continued to hold said remainder, as intestate property, subject to be divested on the birth of a child or children by some other woman than plaintiff. This view of the situation is clearly warranted by the authorities cited under proposition two supra, as it vested in James Harvey Siddens, the life tenant, as heir of his father, the remainder in said property, immediately upon the death of testator, subject to be divested as aforesaid. We are of the opinion, that the conclusions above announced, are correct in principle, and are sustained by the decided weight of authority, some of which are as follows: Gillilan v. Gillilan, 278 Mo. 99; Peugnet v. Berthold, 183 Mo. l. c. 64-5; Fearne on Remainders, pp. 350, 354, 361, 363; 2 Underhill on Wills, sec. 874, p. 1330; 23 R. C. L. p. 518, secs. 56-7, pp. 525-6, sec. 67; Bigley v. Watson,

98 Tenn. 353, 39 S. W. 525; Gilpin v. Williams, 25 Ohio St. 295; Harrison v. Weatherby, 180 Ill. 418, 54 N. E. 237; Bond v. Moore, 236 Ill. 576; Messer v. Baldwin, 262 Ill. 48; Bell's Estate, 147 Pa. St. 389; In re Kenyon, 17 R. I. 149; Rand v. Butler, 48 Conn. 293; Gilman v. Stone, 94 S. W. (Ky.) 28; Coots v. Yewell, 95 Ky. 367, 25 S. W. 597; Stokes v. Van Wyck, 83 Va. 724, 3 S. E. 387; Loring v. Eliot, 16 Gray (Mass.) 568, 574; Craig v. Warner, 5 Mackey (D. C.) 460.

We have read, with a great deal of interest, all the authorities cited in the respective briefs, as well as numerous others referred to in those cited, and feel satisfied with the conclusions heretofore stated. In Gillilan v. Gillilan, 278 Mo. 99, 212 S. W. pp. 351-2, Judge BOND, speaking for Court in Banc, said:

"The only remaining question presented by this appeal is what became of the estate remaining in Nathan Gillilan (which he had specifically devised in clause 5 of his will) upon defeat of that devise for lack of heirs thereafter born to George Gillilan, thereby causing a lapse of the contingent remainder to such heirs. In the solution of this question only two views are possible: First, that such a reversion in Nathan Gillilan passed to his descendants as in case of intestacy; second, that it was conveyed by the residuary clause of the will supra. The latter is the view taken by the learned trial court and is the view taken as a *dernier resort* by appellant Gratia Gillilan (as shown in her brief) in case this court should take, as it does, the view that clause 5 of the will created an estate tail special at common law, which was changed by the statute into a life estate in the tenant in tail with a contingent remainder in fee in certain subsequent heirs of the body of the life tenant. In considering this question it must be realized that Nathan Gillilan had a right, not a mere possibility, of reversion after carving out so much of his estate as was devised through the instrumentality of clause 5 of the will. The reversion so inhering in him was the proper subject of a grant by clause 9 of his will if he so desired; otherwise

it would descend to his heirs at law under the Statute· of Descents and Distribution as in case of intestacy."

Respondent contends, that the above case is not in point, because Nathan Gillilan did not in terms create a life estate in his son George, but it was placed there by the statute. This distinction does not impress us as being sound. The court disposed of the case on the theory that George simply took a life estate, as did James Harvey Siddens in this case. If there had been no residuary clause, in the Gillilan will, it is plain from what is said supra, that the court, in construing said will, would have arrived at the same conclusion reached by us in the present case.

Whether considered upon principle or authority, we are satisfied that the trial court reached an erroneous conclusion in its disposition of this case. We accordingly reverse and remand the cause, with directions. to the trial court, to set aside its decree, and to enter a judgment in behalf of appellant, declaring her to be the absolute owner of the real estate in controversy.

*White* and *Mozley, CC.,* concur.

PER CURIAM:—The foregoing opinion of RAILEY, C., is hereby adopted as the opinion of the court. All of the judges concur.