FRANK BARNETT LANKFORD v. FRANK P. LANKFORD, MOLLIE WEEDIN, JESSE G. LANKFORD, THOMAS C. LANKFORD, MARY ELIZABETH EDWARDS, JOHN LANKFORD, CLINTON LANKFORD, JOE LANKFORD, LEE LANKFORD, MARY GABATHULER, ELLA PERUCCA, VENA HOLMAN, WILLIAM V. A. CATRON, WILLIAM GORDON, FORREST NAVE, BETTIE WARD, MATTIE SETHMAN, JOE CATRON, JOSIE CATRON, ELLA DAVIS, MARY TIPPING, JOHN CATRON, CHARLES CATRON, FLETCHER CATRON, THOMAS CATRON, JR., JOE M. HACKLER, E. E. ERICKSON, and MARGARET ISABELLA CATRON, Defendants, E. E. ERICKSON and MARGARET ISABELLA CATRON, Appellants.—159 S. W. (2d) 264.

Division One, December 12, 1941.

Rehearing Denied, February 26, 1942.

*Ryland, Stinson, Mag & Thomson, Roy B. Thomson* and *Robert E. Rosenwald* for appellants.

*Frank F. Catron* for John W. Catron and Charles C. Catron et al.

1172

*Ike Skelton* for Frank Barnett Lankford.

BRADLEY, C.—This is an action to determine title to and to partition 365.36 acres of land in Lafayette County. The trial court found that the appellants had no interest in the land and ordered partition. Also a receiver was appointed. Appellants appealed from the decree ordering partition and also appealed from the order appointing a receiver. These appeals were consolidated.

The plaintiff and those we designate in the caption as defendants are the collateral kin of James F. Catron, deceased, who died testate and seized of the land. Appellant, E. E. Erickson, is the surviving husband of Mary Elizabeth Catron Erickson, a deceased daughter of James F. Catron. Appellant, Margaret Isabella Catron, is the widow of James F. Catron. Defendant, Joe M. Hackler, is a tenant on the land.

The construction of the James F. Catron will is involved. The will was executed May 15, 1906, and testator died May 21, 1912. After his death, the will was duly probated. The widow, Margaret Isabella, an appellant here, and a daughter, Mary Elizabeth, survived

the testator. He had no other children. The widow was 57 years old at the time of the death of the testator, and Mary Elizabeth was 15. Mary Elizabeth married appellant, E. E. Erickson, and died testate and without issue on May 29, 1940. Hereinafter we refer to the collateral kin as respondents and to E. E. Erickson and Margaret Isabella Catron as appellants.

The pertinent paragraphs of the James F. Catron will are as follows:

"2nd. I give and devise to my beloved daughter, Mary Elizabeth Catron, the following described real estate lying and being situate in Lafayette County, Missouri, viz. (here follows description of land in question), to be held and enjoyed by her for and during her natural life, and remainder to her surviving child or children or their descendants.

"3rd. I hereby direct my executor, hereinafter named, to pay my beloved wife, Margaret Isabella Catron, out of my personal property of which I may die possessed, the sum of twenty thousand dollars ($20,000.00), which sum is equal to the value of the real estate devised to my daughter, Mary Elizabeth Catron, in section two (2) of this will, to be used and enjoyed by her for and during her natural life.

"4th. I further give and bequeath to my wife, Margaret Isabella Catron, absolutely, all my household goods and furniture of whatever description.

"5th. It is my will and I hereby direct that the sum of five thousand dollars ($5,000.00) be set aside for the education of my beloved daughter, Mary Elizabeth Catron, and I make the said sum of five thousand dollars ($5,000.00) a charge upon the estate devised to my wife and daughter.

"6th. I give and bequeath to my wife, Margaret Isabella Catron, and my daughter, Mary Elizabeth Catron, all the rest and residue of estate of which I may die seized and possessed, except as provided for in sections two (2), three (3), four (4), and five (5) of this will, whether real, personal or mixed, absolutely, share and share alike.

"7th. It is my wish that at the death of my beloved wife, Margaret Isabella Catron, all the residue of the property bequeathed to my said wife by the provisions of this will shall revert to our daughter, Mary Elizabeth Catron."

By the 4th paragraph of her will, Mary Elizabeth devised the land here in question to her husband and mother, appellants here, "to have and to hold the same in equal shares in fee simple and absolutely. In the event either my said husband or mother should predecease me the share of said real estate devised to said deceased person is devised to the survivor."

We think that the ruling and the reasoning in Hyde et al. v. Hopkins et al., 317 Mo. 587, 296 S. W. 382, is decisive of the present case. The

Hyde case was to determine title to and to partition about 360 acres of land in Chariton County. The common source of title was Richard. S. Hyde, who died testate in 1871. He had one daughter and five sons. By the first clause of his will he provided that his wife, Eliza D. should have "the use and control of all of the home tract of land, together with the 77½ acres adjoining, known as the 'Moss tract' of land during her natural life free of any charge for rents or profits therefor.

"2nd. I will unto my daughter, Ann Elizabeth Hyde, and to her bodily heirs, all of the home tract of land, together with all the improvements thereon, together also with the 77½ acres of land known as 'Moss tract' of land.

"3rd. I will and direct that the remaining portion of my estate shall be equally divided and apportioned among my other children, viz., George W. Hyde, James B. Hyde, Henry C. Hyde, Walter E. Hyde, and Lucius D. Hyde."

The widow, the daughter, and the five sons survived the testator. In 1873, the five sons, including Henry C., the father of the plaintiffs in that case, for an expressed consideration of $8300, conveyed to their sister, Ann Elizabeth, by general warranty deed, all of their interest in the land in controversy. In 1904, Henry C. died intestate. In 1908, Ann Elizabeth died testate, and single and without issue. By her will, Ann Elizabeth, subject to certain claims of others, devised the land to the defendant, Margaret Hopkins.

The plaintiffs in the Hyde case contended that the deed made to Ann Elizabeth, by her five brothers, was ineffectual, so far as concerned Henry C., the father of the plaintiffs, because Henry C. predeceased his sister, the grantee. For the defendant, Margaret Hopkins, to whom Ann Elizabeth devised the land, and the other defendants, the contention was that the five sons of Richard S. Hyde, under the third clause of his will, were vested contingent remaindermen; that the third clause of the will devised to the five sons the estate in reversion of Richard S. Hyde, "and that the interest of Henry C. Hyde was never divested, but became absolute, because Ann Elizabeth Hyde died without heirs of her body, and that she, having taken under the deed to her the interest in reversion, and dying without heirs of her body, her will passed to defendants the fee to the whole" (296 S. W. l. c. 384).

It was held that the contention made for the defendants in the Hyde case was the correct construction of the will concerned. In ruling the Hyde case, the court reviewed and followed Gillilan v. Gillilan, 278 Mo. 99, 212 S. W. 348; Collins v. Whitman, 283 Mo. 383, 222 S. W. 840; Watson v. Watson, 110 Mo. 164, 19 S. W. 543.

In the present case and on the authority of the Hyde case, and the cases there cited and reviewed, and on Legg et al. v. Wagner et al. (Mo.), 155 S. W. (2d) 146, we hold that by the sixth clause of the

James F. Catron will the reversionary interest vested in the wife and daughter, subject to be divested in the event the daughter left issue surviving, but such contingency did not occur. There is no rule of construction and no law that would prevent a life tenant under a will from receiving a reversionary interest in fee by a subsequent provision in the will. Evans v. Rankin et al., 329 Mo. 411, 44 S. W. (2d) 644.

The course of reason followed in Lewis v. Lewis et al., 345 Mo. 816, 136 S. W. (2d) 66, was, in effect, the same we have followed here. In that case we said (136 S. W. (2d) l. c. 71) :

"Reviewing the facts before us, we find that item 4 of the will devises the real estate described to respondent 'for the term of her life and, at her death, to the heirs of her body, absolutely in fee simple.' Respondent, therefore, took a life estate in said real estate with a remainder in fee unto those who should prove to be heirs of her body at her death. Sec. 3110, R. S. Mo. 1919, Mo. St. Ann., Sec. 3110, R. S. Mo. 1919, Mo. St. Ann., Sec. 3110, p. 1938. The remainder in fee was contingent or executory since the estate in remainder was limited to take effect upon an uncertain event, to-wit, respondent having heirs of the body, and to uncertain persons, to-wit, those who should be the heirs of her body at her death. For definition, 'contingent remainder,' see Norman v. Horton, 344 Mo. 290, 126 S. W. (2d) 187, 191 (9). After the devise of this real estate by item 4 of his will Hugh Lewis, Sr., had a vested right of reversion therein. For definition, 'reversion,' see Norman v. Horton, supra, 344 Mo. 290, 126 S. W. (2d) 187, 189 (1). This reversionary estate was the subject of a valid devise under item 7 of the will. Gillilan v. Gillilan, supra. Item 7 provides, 'I give and devise to my beloved wife, Adaline Lewis, all the remainder of my estate, real and personal and mixed.' The reversionary estate, transferred by this residuary clause, was a vested interest but subject to being divested in the event that respondent was survived at her death by 'heirs of her body.' Upon the death of testator the reversionary interest in fee, in the real estate described, vested in the widow, Adaline Lewis, subject to the life estate and the contingent remainder devised under item 4 of the will. Hobbs v. Yeager (Mo.), 263 S. W. 225, 227; Gillilan v. Gillilan, supra; Collins v. Whitman, supra; Hyde v. Hopkins, supra."

Two separate briefs, in the present case, were filed on behalf of respondents, the collateral kin. In one of these briefs it is stated that "the trial court correctly held that the residuum after a life estate followed by a remainder which failed was reversion, which passed the fee to the testator's heirs at law at the death of the life tenant." Such, in effect, is the contention of all the respondents. And this means that James F. Catron, as it turned out, died intestate as to the reversionary interest in the lands involved. But if such were the case "no different result could be reached" (296 S. W. l. c. 385), because in

such case the daughter, Mary Elizabeth, would have inherited the whole of the land subject to the marital rights of her mother.

The trial court, over the objection and exception of appellants, permitted Vena Holman to testify as to a statement she claimed to have heard the testator, James F. Catron, make to her father shortly before the testator's death in 1912. The purpose, according to counsel for respondents, was "to put the meaning of the words in his will, to throw light upon them." Mrs. Holman testified: "He (the testator) told father—he was talking about his will the day, or day before, and he said that it was his wish that at his death it should go to Elizabeth—his property—all that he owned, and he said that in case Elizabeth didn't marry, that it was to go back to his people—that all of his property was to go back to the Catron heirs. That was his wish. Q. Do you recall whether or not at that time and place he said anything about what he wanted to happen in the event his daughter Elizabeth never did have any children surviving her? Do you recall what he said? A. That it was to go back to the Catron heirs—to his people."

The will was not ambiguous, and such evidence was not competent. The judgment should be reversed and the cause remanded with direction to receive the final report of the receiver and discharge him when the report is approved, enter judgment that respondents, the collateral kin, have no interest in the land, dismiss the petition to partition, and enter judgment that title to the land is in appellants. It is so ordered. *Hyde* and *Dalton, CC.,* concur.

PER CURIAM:—The foregoing opinion by BRADLEY, C., is adopted as the opinion of the court. All the judges concur.