RALPH A. DAVIDSON v. HAL TODD, CLAUDE E. HUNTINGTON, DORA HENDREN, AUGUSTUS KINCAID, VERDIE MCINTOSH, PAUL KINCAID, IRENE OLDS, BILLIE WADE, DORA WEAR, LIZZIE WYMORE, ROY P. KINCAID, LULU HUDSON BARNES, WILLIAM CAMPBELL DAVIDSON, ETTA DAVIDSON, JAMES C. DAVIDSON, and ELLA DAVIDSON, and ETTA DAVIDSON, Administratrix of the Estate of ERNEST E. DAVIDSON, IDA DAVIDSON, FANNIE STRAINE, VENA MAE BROWN, VESTER STEELE DAVIDSON, MOLLIE E. THOMPSON, BERTHA GEORGE, JOSEPH A. DAVIDSON, OTIS L. DAVIDSON, JOHN DAVIDSON, CHARLES DAVIDSON, MINNIE DAVIDSON, JOSEPH DAVIDSON, ELLA M. STUNZ, an Individual Doing Business as THE E. A. STUNZ LUMBER COMPANY, Assignee of FOREST DAVIDSON, NATIONAL COMMERCIAL BANK, Liberty, Missouri, E. KEMPER CARTER, WILLIAM B. WATERS, Trustee, SOPER J. TAUL, Administrator of the Estate of JAMES FRANKLIN KINCAID; and the unknown heirs, devisees, donees, alienees, immediate, mesne and remote, of ANDREW C. DAVIDSON, of FLORINDA DAVIDSON HUDSON, of JOSEPH KINCAID, of JOHN KINCAID, son of said JOSEPH KINCAID, OF JOHN KINCAID DAVIDSON, OF ALEXANDER STEELE DAVIDSON, and of JAMES A. DAVIDSON, brother of said ANDREW C. DAVIDSON. and of each and every one of them, Respondents, MARY BELLE DAVIDSON, Appellant.—No. 38096.—167 S. W. (2d) 641.

Division Two, January 4, 1943.

640

*John C. Loos* for appellant.

*Lawson & Hale* for respondents.

BOHLING, C.—Partition. Ralph Davidson instituted the action against Mary Belle Davidson and others on the theory he and the defendants, except said Mrs. Davidson, held all the right, title and interest in and to certain real estate as or through collateral heirs

of one Andrew C. Davidson. Mrs. Davidson disputed said allegations of ownership, asserted a fee simple title in herself, and denied the right of the others to partition. The trial court found against Mrs. Davidson, decreed partition and Mrs. Davidson appealed.

The principal facts are in the wording of a deed from Andrew C. Davidson to his son John Davidson (also known as John R. Davidson), the deceased husband of Mrs. Davidson, appellant. On June 24, 1882, the father, as "party of the first part," deeded the real estate involved to the son, as "party of the second part." The recited consideration was "one dollar" and "love and affection." The grant was "unto said party of the second part and the heirs of his body." The habendum was: "unto the only proper use, benefit and behoof of the said party of the second part and the heirs of his body forever. The said premises to revert to the grantor herein or become part of his estate, in the event of the death of said party of the second part without heirs of his body. The said real estate shall not be liable in any manner for any debt, obligation or demand of any nature contracted by the said party of the second part; nor shall the rents, issues or products thereof be subjected to the payment of any obligation due by said party of the second part, but the same shall be free from any and all claims against the said party of the second part." This was followed by the testimonium and signature. At that time John Davidson was unmarried and about eighteen years of age. According to the record, Andrew C. Davidson had two children in addition to his son John, but each of said children died leaving no surviving descendant. In October, 1896, Andrew C. Davidson died, intestate, leaving as his sole and only heir his said son, John Davidson. John Davidson, subsequent to June 24, 1882, married. He never had any children. He died January 11, 1939, intestate, without heirs of his body, leaving surviving his widow.

The words of inheritance and procreation in the deed—"unto said party of the second part and the heir of his body"—created an estate tail.[1] Under Sec. 3498, R. S. 1939 (then Sec. 3941, R. S. 1879), this estate tail was converted into an estate for life in the first taker, with the remainder in fee to the person to whom the estate tail would, on the death of the first taker, pass according to the course of the common law. Consequently, under the above quotation from this inter vivos conveyance and said statute the first taker took a

[1]"Estates tail are estates of inheritance which, instead of descending to heirs generally, go to the heirs of the donee's body, which means his lawful issue, his children, and through them to his grandchildren in a direct line, so long as his posterity endures in a regular order and course of descent, and on the extinction of such issue the estate determines." 31 C. J. S., p. 35, Sec. 21; 19 Am. Jur., p. 507, Sec. 47; Inlow v. Herren, 306 Mo. 42, 65, 267 S. W. 893, 899[10].

life estate; the heirs of his body took a contingent remainder[2] in the fee, and, pending the vesting of said contingent remainder, the reversion,[3] the fee, remained in the grantor.

 "The intention of the grantor, as gathered from the four corners of the instrument, is now the pole star of construction. That intention may be expressed anywhere in the instrument, and in any words, the simpler and plainer the better, that will impart it; and the court will enforce it no matter in what part of the instrument it is found." Utter v. Sidman, 170 Mo. 284, 294, 70 S. W. 702, 705. See Leeper v. Leeper, 347 Mo. 442, 447, 147 S. W. 2d 660, 662[3], citing cases; 16 Am. Jur., p. 532, Sec. 168, p. 570, Sec. 237; 26 C. J. S., p. 324, Sec. 83.

██ What intent did the grantor manifest by the subsequent provisions to the effect that the premises were "to revert to the grantor herein or become part of his estate" in the event of the death of the first taker without heirs of his body and that the real estate and the rents, issues and products thereof should not be subject to the payment of any obligations of said first taker, irrespective of their legal effectiveness? Respondents contend the deed, considered as a whole, created contingent remainders in the alternative; first, in the bodily heirs of the first taker, and, second, in default thereof, in the collateral heirs of the grantor. Appellant contends the reversion remained unaffected.

We quote from 3 Restatement of the Law of Property, p. 1776, Sec. 314, with the thought that the history, development, and reasoning involved is there well outlined: "(1) When a person makes an otherwise effective inter vivos conveyance of an interest in land to his heirs, . . . then, unless a contrary intent is found from additional language or circumstances, such conveyance to his heirs . . . is a nullity in the sense that it designates neither a conveyee nor the type of interest of a conveyee." The historical rationale is said to be "the doctrine of worthier title as applied to inter vivos conveyances"; the justification being "found in the preference for title by descent rather than title by purchase, which preference had its origin in the feudal system. Under the feudal system the overlord was entitled to the valuable incidents of relief when an heir inherited land and, as to many types of land ownership, he was entitled also to the

---

[2]"A contingent remainder is one where the estate in remainder is limited either to a dubious and uncertain person, or on the happening of a dubious and uncertain event." 31 C. J. S., p. 90, Sec. 71; 23 R. C. L., p. 498, Sec. 29; Norman v. Horton, 344 Mo. 290, 298[5], 126 S. W. (2d) 187, 191[9].

[3]"An estate in reversion is the residue of an estate left in the grantor, to commence in possession after the determination of some particular estate granted out by him. The term 'reversion' has two meanings; First, as designating the estate left in the grantor during the continuance of a particular estate. Second, the returning of the land to the grantor or his heirs after the grant is over." 31 C. J. S., p. 125, Sec. 105, a; 23 R. C. L., p. 1100, Sec. 2; Norman v. Horton, 344 Mo. 290, 295[2], 126 S. W. (2d) 187, 189[1].

valuable incidents of wardship and marriage when an inheriting heir was a minor. These incidents were preserved if, in an inter vivos conveyance by A 'to my heirs,' the limitation to the heirs of A was deemed a nullity. . . . In the early stages of the development of the rule . . . it was a rule of law applicable only to conveyances of land. Due to the prevalence in modern times of a policy to effectuate the intention of the conveyor when no good reason requires its frustration, the modern authorities have relaxed this rule of law into a rule of construction. . . .

"The continuance of the rule . . . as a rule of construction is justified on the basis that it represents the probable intention of the average conveyor. Where a person makes a gift in remainder to his own heirs (particularly where he also gives himself an estate for life) he seldom intends to create an indestructible interest in those persons who take his property by intestacy, but intends the same thing as if he had given the remainder 'to my estate.' "

And p. 1781, e: "The rule stated in this Section is a rule of construction based on the inference that the average conveyor does not intend by a limitation to his own heirs to create in them an interest which is indestructible by him during his own lifetime. Hence, the contrary manifestation of intent, which is effective to overcome the constructional preference . . . , is an indication from the words of the conveyance that the conveyor really gave thought to the creation of a future contingent interest in those persons who would take from him by intestacy and understood that he was creating an interest in them which he could not affect by any action on his part." See also 125 A. L. R. 548; 26 C. J. S., p. 410, Sec. 115; 23 R. C. L., p. 1100, Sec. 3; 2 Tiffany, Real Property (3rd Ed.), p. 7, Sec. 312. Missouri cases are not out of accord: Hobbs v. Yeager, ▮▮▮ 263 Mo. 225, 227[1], citing cases; Stockwell v. Stockwell, 262 Mo. 671, 678, 172 S. W. 23, 25[1]; Davis v. Austin, 348 Mo. 1094, 1100[3], 156 S. W. 2d 903, 905[3]; Keller v. Keller, 338 Mo. 731, 737[2], 92 S. W. 2d 157, 160[3]. Consult with respect to testamentary devises by way of analogy: Hyde v. Hopkins, 317 Mo. 587, 592, 296 S. W. 382, 385[6, 7]; Lewis v. Lewis, 345 Mo. 816, 826[4], 136 S. W. 2d 66, 71[7]; Lankford v. Lankford, 348 Mo. 1170, 159 S. W. 2d 264, among others. The instant clause read: "The said premises to revert to the grantor herein or become part of his estate." Grantor conveyed to himself as grantee that estate which he already held—conveyed as a remainder what he had as a reversion. If an inter vivos gift in remainder to grantor's own heirs be a nullity for the reasons indicated, a fortiori the average grantor would not intend to create an indestructible interest in himself or in his estate in a grant inter vivos. The quoted words usually may be considered to express an intention to hold the reversion and not to put the fee in abeyance. See also Pinkney v. Weaver, 216

Ill. 185, 74 N. E. 714[1], 717, affirming 115 Ill. App. 582, 585; Baxter v. Bryan, 123 Ky. 235, 94 S. W. 633; Goslee's Admr. v. Goslee's Exr., 94 S. W. 638; 18 C. J., p. 310, Sec. 292(8).

As stated in 3 Restatement of the Law of Property, p. 1715, k, some incongruity appears in a devise of a life estate to the sole heir of testator and a contingent remainder of the fee to said devisee's bodily heirs, with the reversion remaining in testator's heir—said devisee for life—in the event of said devisee's death without bodily heirs. This incongruity is lessened, if it exists, where the conveyance is inter vivos and the expressed reversion is in the grantor or his estate; for, among other things, the grantor may survive said life tenant whereas a testator does not survive his heirs. The instant record indicates Andrew C. Davidson had three children, but the time of death of those other than John Davidson is not shown.

The provisions with respect to exempting the land and the rents, issues and products from the payment of obligations of the party of the second part is explicitly limited to the life estate vested in said first taker. It does not purport to operate on the fee. An intention to preserve the remainders in the first taker's bodily heirs or the reversion in the grantor from the obligations of the life tenant is expressed. We are not authorized to expand this manifested intent to embrace an intent not manifested, but by silence impliedly excluded.

Respondents stress Norman v. Horton, 344 Mo. 290, 126 S. W. 2d 187. That case passed on a deed reading in part: "The object and intention of the" grantors "is, by this deed, to convey to the" grantee "*only* a life estate or interest in and to the above described Real Estate with Remainder over to the heirs-of-her Body, legally begotten—but should the said" grantee "die without Bodily Heirs, as aforesaid, surviving her, then the title to the above described Real Estate, at her death, shall revert to and vest absolutely in the Heirs-at-law of" one of the grantors. Seeking the intention of the grantors in an effort not to mutilate their solemn deed, we concluded the word "revert" was not used in its technical sense but was intended to mean "pass" or "go to" and grantors intended, as their stated "object and intention," that the "title" (not the right of enjoyment) "at the death" and not until "then," was to "revert to and vest absolutely," pass or go to and vest absolutely in the grantor's then heirs. Consistent with the comment in Norman v. Horton, the instant deed involved a simple reversion. There was no specific indication that title or time of vesting was especially involved. The issue on which Norman v. Horton was ruled appears not to have been presented or considered in Wells v. Kuhn (Mo.), 221 S. W. 19. Stephens v. Moore, 298 Mo. 215, 249 S. W. 601, may be distinguished from Norman v. Horton on the facts. They were not called to our attention. We think the issue rightly ruled upon which Norman

v. Horton turned and distinguishable on the facts from the instant issue. Observations there made arguendo and unnecessary to a determination of the review, dictum, lack authoritative force as a precedent if necessarily inconsistent herewith.

Andrew C. Davidson carved lesser estates out of his fee simple estate; a life estate in his son John Davidson, and a contingent remainder in the heirs of his son's body. The fee, the reversion, remained in Andrew, was descendible and, upon his death intestate, passed to his only heir, his son John. 26 C. J. S., p. 1023, Sec. 18; 31 C. J. S., p. 128, Sec. 108; 16 Am. Jur., p. 795, ▮ Sec. 28; Lankford v. Lankford, 348 Mo. 1170, 1176, 159 S. W. 2d 264, 266[2], citing cases; Davis v. Austin, 348 Mo. 1094, 1100[3], 156 S. W. 2d 903, 905. John then, in addition to his life estate, held the reversion subject to the possibility of the aforesaid contingent remainder vesting in heirs of his body upon his death. But John never had any issue or any heirs of his body. The contingent remainder finally determined upon the death of John without heirs of his body and fell in for want of a taker. The reversion remained, and, upon John Davidson's death intestate, with no father, mother, brother or sister, or their descendants, surviving, passed to his widow, Mrs. Davidson, appellant herein. Sec. 306, R. S. 1939.

The judgment is reversed with directions to enter judgment denying partition and in conformity with appellant's answer and the foregoing. *Westhues* and *Barrett, CC.,* concur.

PER CURIAM:—The foregoing opinion by BOHLING, C., is adopted as the opinion of the court. All the judges concur.